No. 89-226

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

    Plaintiff and Respondent,

    v.

KATHRYN HARRIS,

    Defendant and Appellant.

APPEAL FROM: District Court of the Fourteenth Judicial District,
In and for the County of Musselshell,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Gary E. Wilcox, Billings, Montana

    For Respondent:

    Marc Racicot, Attorney General, Helena, Montana;
Dorothy McCarter, Ass't. Attorney General, Helena,
Montana; Carol A. Donaldson, legal intern, Helena,
Montana; Gerry M. Higgins, Special Deputy County
Attorney for Musselshell County, Ryegate, Montana

Submitted on briefs: December 18, 1990

Decided: January 24, 1991

**FILED**

Filed: JAN 24 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

1

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

A jury found defendant, Kathryn Harris, guilty of two counts of felony sexual assault. Defendant appeals. We reverse and remand for a new trial.

We frame the issues as follows:

1. Did the State's expert witness improperly comment on the credibility of an alleged victim who testified at trial?

2. Did the District Court err in allowing the State's expert witness to identify defendant as the perpetrator of the alleged crimes by testifying as to hearsay statements made to her by the alleged victims during the course of therapy?

3. Did the District Court err in granting the jury's request to have the testimony of an alleged victim read to it after the case had been submitted to the jury?

During the fall of 1987, defendant was employed as a full-time babysitter for a three-year-old girl, referred to as "Janey Doe," and a five-year-old boy, referred to as "Robby Roe." Beginning in about mid-September of that year, Janey began complaining that her bottom hurt. On November 18, 1987, she complained of stomach problems. Later that evening, she fell on the stairs, cried and moaned that her vagina hurt. Janey's mother, Mrs. Doe, wondering what sort of fall could hurt her vagina, examined Janey and discovered a thick glob of mucous in the vaginal area. When Mrs. Doe wiped the area with a warm washcloth, Janey cried and screamed in pain. Mrs. Doe then noticed that the lip of

2

Janey's vagina was streaked with blood-like blisters. She also noticed a bruise on Janey's lower right vagina.

The following day, Mrs. Doe took Janey to her pediatrician for an examination. The pediatrician, who was trained in sexual abuse, discovered a bruise outside of Janey's vagina, along with abrasions on the side of the vagina. She labeled the injuries as non-accidental and consistent with sexual abuse.

On November 25, 1987, Janey began therapy sessions with Sandi Burns, a psychotherapist specializing in child sexual abuse. During the course of the sessions, Janey told Burns that defendant had put a stick in her vagina, placed a finger in her vagina and hit her vagina with her hands or a stick. In addition, Janey told Burns that defendant's husband, Eric Harris Cates, stuck his penis in her vagina.

Janey indicated that Robby Roe had also been sexually abused by defendant and her husband. Subsequently, on February 1, 1988, Burns examined Robby. Robby related to Burns stories of sexual abuse by defendant and her husband.

On February 26, 1988, defendant was charged with two counts of felony sexual assault against the minor children in violation of § 45-5-502, MCA. Her husband, Cates, was charged at the same time with one count of sexual intercourse without consent against Janey Doe, or, in the alternative, sexual assault, and one count of felony sexual assault against Robby Roe.

The District Court granted the defendants' motion for separate trials. Cates' trial was held in July, 1988, in the Fourteenth

3

Judicial District Court, Musselshell County, the county in which the offenses occurred. A jury found Cates guilty of one count of sexual intercourse without consent and one count of sexual assault. On appeal, this Court overturned the sexual intercourse without consent conviction, holding that the evidence was insufficient to sustain the conviction. State v. Cates, 241 Mont. 282, 787 P.2d 319 (1990).

Due to the publicity engendered by the Cates trial, defendant Harris was granted a change of venue from Musselshell County to Gallatin County. Prior to trial, defendant filed a motion in limine seeking to exclude hearsay statements made by Janey to any State witness. Defendant also sought to prohibit Sandi Burns, the childrens' therapist, from testifying that the children were sexually assaulted and that they were truthful, credible and consistent. The motions were denied.

Trial commenced on November 14, 1988. Janey did not testify, having been found incompetent by the District Court prior to the Cates trial. Robby, however, did testify, as did the psychotherapist Burns.

On November 16, 1988, the jury found defendant guilty of two counts of felony sexual assault. Defendant was sentenced to 14 years imprisonment on each count, with seven years suspended, both sentences to run concurrently. This appeal followed.

I.

Did the State's expert witness improperly comment on the

4

credibility of an alleged victim who testified at trial?

At trial, Sandi Burns, the psychotherapist who examined both Janey and Robby, testified that Robby was "a little, honest, open country boy . . . . [H]e's a pretty trustworthy child . . . . [He] is very honest." Defendant argues that this testimony constituted an improper comment on Robby's credibility.

The question of the credibility of an alleged victim lies exclusively within the province of the jury. Expert testimony regarding credibility improperly invades the jury's function by placing a stamp of scientific legitimacy on the victim's allegations. Therefore, we generally will not allow an expert witness to comment on the credibility of an alleged victim. State v. Brodniak, 221 Mont. 212, 222, 718 P.2d 322, 329 (1986).

We have carved out one exception to this rule. In cases involving sexual abuse of a minor child, we will allow expert testimony on the credibility of the alleged victim. State v. Geyman, 224 Mont. 194, 200, 729 P.2d 475, 479 (1986). This exception applies, however, only when the victim testifies at trial, State v. J.C.E., 235 Mont. 264, 269, 767 P.2d 309, 312-13 (1988), and credibility is brought into question. See State v. Hall, 797 P.2d 183, 191, 47 St.Rep. 1501, 1510 (Mont. 1990).

In the present case, although Robby testified at trial, his credibility was not attacked by defendant. Defendant did not denigrate Robby's credibility in an opening statement or cross-examine him when he took the stand. The only time she touched on the issue of credibility was during the cross examination of

5

Robby's mother when she asked if Robby had at first denied the abuse. The State, however, had opened the door to this line of questioning by bringing the matter up on direct. Because Robby's credibility was not called into question by defendant, the District Court committed reversible error by allowing the psychotherapist to comment directly on his trustworthiness.

## II.

Did the District Court err in allowing the State's expert witness to identify defendant as the perpetrator of the alleged crimes by testifying as to hearsay statements made to her by the victims during the course of therapy?

As we noted in J.C.E., 235 Mont. at 267-68, 767 P.2d at 311-12, cases involving sexual abuse of young children raise troubling evidentiary questions. When an alleged victim of abuse is a young child who, in a courtroom setting, may be unable to relate information about the alleged offense, probative evidence may be lost. Out-of-court statements made by the child to others therefore become some of the most valuable evidence available. These statements, however, constitute hearsay, and are normally inadmissible in court.

The courts are thus forced to walk a fine line between following the traditional rules of evidence and excluding what might be the most probative, material evidence of the crime. The dilemma is especially acute when, as in this case, the criminal defendant's Sixth Amendment right of confrontation is implicated by the unavailability of a child declarant.

6

In addition to posing confrontation problems, another danger involved in allowing hearsay statements, especially when they are admitted through an expert witness such as a counselor or psychologist, is that the expert becomes a surrogate witness for the child. While we recognize that expert testimony regarding the sometimes puzzling and seemingly contradictory behavior of victims of child sexual assault may aid the jury to determine ultimate issues, such as whether the crime actually occurred, we must be careful not to allow the witness to become a conduit for otherwise inadmissible testimony.

In J.C.E., 235 Mont. at 269-70, 767 P.2d at 313, we held that the identification of the perpetrator of a crime is not a proper subject for expert testimony under Rule 702, M.R.Evid., which allows expert testimony if it will "assist the trier of fact to understand the evidence," or Rule 704, M.R.Evid., which allows an expert to render an opinion on an ultimate issue. We noted that an opinion on an ultimate issue may be rendered only if it assists the jury. Whether a child was the victim of sexual abuse is a question that may be clarified by expert testimony. "However, whether the evidence adduced by the State establishes [defendant] as the perpetrator requires only the common logic that is indeed well within the capacity of a lay jury." J.C.E., 235 Mont. at 270, 767 P.2d at 313.

The State argues that the testimony of psychotherapist Sandi Burns may be admitted through Rule 803(4), M.R.Evid., the medical diagnosis and treatment exception to the hearsay rule. This

exception provides as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . .
>
> (4)   Statements for purposes of medical diagnosis or treatment.   Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Rule 803(4), M.R.Evid.

We considered and rejected this contention in J.C.E., 235 Mont. at 271, 767 P.2d at 313, stating, "We decline to extend the medical diagnosis and treatment exception beyond medical doctors . . . ." The State urges us to reconsider our ruling and attempts to distinguish the present case from J.C.E. on the grounds that the counselor in that case was unlicensed and therefore without the necessary authority to render medical diagnosis while the counselor in this case is licensed. The State further points out that the Commission Comments indicate that the exception was not intended to apply only to statements made to medical doctors.

The Commission Comments state:

> The exception allows statements made to any person and about any pertinent subject, so long as within the purpose of the exception. (Emphasis added.)

Commission Comments to Rule 803(4), M.R.Evid., 3 M.C.A. Annot., Title 26 at 352 (1986).

While we agree with the State that in some cases hearsay statements made to persons other than physicians may be admissible under the medical diagnosis and treatment exception, we once again

8

decline to extend the exception beyond medical doctors in cases involving abuse of young children because we cannot be assured that such statements are "within the purpose of the exception."

Statements made for purposes of medical diagnosis and treatment must satisfy a two-part test before they come within the purpose of this exception to the hearsay rule. First, the declarant's motive in making the statement must be consistent with seeking medical treatment. Second, the statement must be of a type reasonably relied on by a physician when making diagnosis and treatment decisions. J.C.E., 235 Mont. at 270, 767 P.2d at 313.

The State argues that hearsay statements made by a child victim of sexual assault to her counselor should be admitted under the medical treatment exception because the counselor relies on the identity of the perpetrator in determining the most appropriate course of treatment for the victim. While we do not doubt that this assertion is correct, it ignores the first requirement of the exception, that is, that the victim or patient understands the need for telling the truth to his or her doctor.

The reliability of the medical treatment exception to the hearsay rule is assured by the first prong of the test. The declarant who seeks medical treatment possesses a selfish motive in telling the truth. He knows that "the effectiveness of the treatment he receives may depend largely upon the accuracy of the information he provides." C. McCormick, McCormick on Evidence § 292 at 839 (E. Cleary 3d ed. 1984).

In J.C.E., 235 Mont. at 271, 767 P.2d at 314, we noted that

the trustworthiness of statements made by a young child to her counselor is not necessarily assured because "[t]he child might not comprehend the necessity of telling a doctor the truth in order to aid diagnosis and treatment."  Because we cannot be assured of the reliability of statements made by young children to their counselors, we hold that statements made to the child's counselor cannot be admitted into evidence under the medical treatment exception to the hearsay rule.

The State argues, in the alternative, that the hearsay statements in question may come into evidence under the residual exception to the hearsay rule, Rule 804(b)(5), M.R.Evid., which provides that statements not specifically covered by any of the enumerated exceptions may be admissible if they possess "comparable circumstantial guarantees of trustworthiness."

In J.C.E., 235 Mont. at 273, 767 P.2d at 315, we noted that hearsay statements made by a minor child who is the alleged victim of sexual abuse and who is unavailable for trial may be admissible under Rule 804(b)(5), M.R.Evid.  Such statements are admissible, however, only if the following conditions are present:

> 1.  The victim must be unavailable as a witness, whether through incompetency, illness or some other like reason (e.g., trauma induced by the courtroom setting).
>
> 2.  The proffered hearsay must be evidence of a material fact, and must be more probative than any other evidence available through reasonable means.
>
> 3.  The party intending to offer the hearsay testimony must give advance notice of that intention.

J.C.E., 235 Mont. at 273, 767 P.2d at 315.

With regard to Burns' testimony involving statements made to

10

her by Janey, it is uncontested that Janey was unavailable as a witness due to incompetency. Therefore, the first condition is satisfied.

The second prerequisite, however, is not satisfied. Although the hearsay statements attested to by Burns identified defendant as the perpetrator of the sexual assaults against Janey and were therefore material, they were not the most probative evidence on the matter. Robby, a victim of the abuse and an eyewitness to the alleged assault against Janey, testified that he saw defendant touch Janey "on the 'bagina.'" Because Robby was able to link defendant to the sexual assault against Janey, the identification of defendant through hearsay statements was cumulative and served only to bolster Robby's testimony.

The hearsay testimony regarding Robby's statements to Burns are inadmissible under Rule 804(b)(5), M.R.Evid., because Robby was available for trial. However, Robby's hearsay statements could under some circumstances be admitted under Rule 803(24), M.R.Evid., the residual exception to the hearsay rule used when the declarant is available to testify, as long as the statements possess "circumstantial guarantees of trustworthiness."

The preliminary protections that apply to Rule 804(b)(5), M.R.Evid., also apply to Rule 803(24), M.R.Evid. The proffered hearsay must be evidence of a material fact; the hearsay must be more probative than any other evidence available through reasonable means; and the party intending to offer the hearsay testimony must give advance notice of that intention.

11

In the present case, we hold that the statements made by Robby to Burns during counseling sessions are inadmissible. Because Robby was available to identify and did indeed identify defendant as the perpetrator of the crime, the hearsay statements to which Burns testified were not the most probative evidence on the matter. As we noted above, Burns' testimony on this issue was merely cumulative, serving only to bolster Robby's testimony.

For guidance in future cases, we will now discuss, using the factors set forth in J.C.E., 235 Mont. at 274, 767 P.2d at 315, the conditions under which hearsay testimony by a therapist who is an expert in treating victims of child sexual abuse may be admitted under the residual exceptions of Rule 804(b)(5), M.R.Evid., the exception used when the declarant does not testify, and Rule 803(24), M.R.Evid., the exception used when the declarant does testify. We emphasize that the district courts need reach this analysis only if the preliminary protections of both rules have been satisfied. As we stated above, those protections are, in the case of Rule 804(b)(5), M.R.Evid., the child declarant is unavailable as a witness, the proffered hearsay is the most probative evidence of a material fact, and advance notice has been given of the intent to use the testimony; in the case of Rule 803(24), M.R.Evid., the proffered hearsay is the most probative evidence of a material fact and advance notice has been given of the intent to use the testimony.

The factors concerning the attributes of the child hearsay declarant as enumerated in J.C.E., 235 Mont. at 274, 767 P.2d at

315, will vary in each case and are not particularly germane to this discussion. We do note that any time the child has been determined to be incompetent to testify at trial, the child's ability to communicate verbally (one of the factors) is questionable.

The second group of factors set forth in J.C.E. are:

a. The witness's relationship to the child.

b. Whether the relationship between the witness and the child might have an impact on the trustworthiness of the hearsay statement.

c. Whether the witness might have a motive to fabricate or distort the child's statement.

d. The circumstances under which the witness heard the child's statement, including the timing of the statement in relation to the incident at issue and the availability of another person in whom the child could confide.

J.C.E., 235 Mont. at 274, 767 P.2d at 315.

A therapist does not see a child for treatment of the effects of sexual abuse unless there has been a claim that the child has been sexually abused. The therapist is therefore arguably predisposed to confirm what he or she has been told. We conclude that the nature of the relationship between a therapist and a child client has a negative impact on the trustworthiness of the hearsay statement. We further conclude that, in general, the circumstances in which a therapist hears a child's statement about sexual abuse are not such that a hearsay statement by the therapist will possess circumstantial guarantees of trustworthiness.

Among the factors listed in J.C.E., 235 Mont. at 274, 676 P.2d at 315, concerning "the statement itself," is whether the statement

13

was volunteered spontaneously. Statements to a therapist are not made spontaneously, but are made in response to questioning, whether direct or indirect. Another factor listed in J.C.E., 235 Mont. at 274, 767 P.2d at 315-16, is "the suggestiveness of prior statements by the witness . . . ." In order to elicit a story of sexual assault from a child, a therapist may often resort to leading questions. Inherent in this type of suggestive questioning is the danger of planting the idea of sexual abuse in the mind of the child.

In analyzing these factors, we conclude that only in an extraordinary case will hearsay testimony by a therapist concerning the identity of the perpetrator or the nature of the abuse possess sufficient circumstantial guarantees of trustworthiness to be admissible into evidence. We hold that hearsay statements of a child victim of sexual abuse who does not testify at trial will, in general, not be admissible under Rule 804(b)(5), M.R.Evid., through the child's therapist. Nor will the hearsay statements of a child victim of sexual abuse who does testify at trial generally be admissible under Rule 803(24), M.R.Evid., through the child's therapist.

In sum, the hearsay statements about the assaults were improperly admitted into evidence in this case. Their admission into evidence constituted reversible error. We emphasize that this ruling does not prevent an expert witness such as Sandi Burns from testifying, after a proper foundation has been laid, as to the characteristics of children who have been sexually abused or as to

14

whether a particular child displays those characteristics. It also does not prevent such an expert from testifying under another hearsay exception such as excited utterances or _res gestae,_ depending upon the circumstances.

## III.

Did the District Court err in granting the jury's request to have the testimony of an alleged victim read to it after the case had been submitted to the jury?

During deliberations, the jury asked the District Court to let it review Robby's testimony. The jury's written request to the court stated, in part, "We would like to review [Robby's] testimony on the witness stand. We feel that we need all of [Robby's] testimony . . . to compare with other testimony!"

The District Court summoned counsel for both sides and informed them of the request. Defendant objected to the request. The court overruled the objection. The jury was then escorted into the courtroom and Robby's testimony was read in its entirety.

At common law, the trial court had no discretion to read a transcript of a witness's testimony or submit testimonial materials to the jury room for unsupervised review during jury deliberations. This rule was designed to prevent an undue emphasis of the submitted materials over all other evidence in the case. Chambers v. State, 726 P.2d 1269, 1275 (Wyo. 1986).

Statutory law permits a court to refresh the jury's recollection of trial testimony under certain limited circumstances. Section 46-16-503(2), MCA. The statute provides:

After the jury has retired for deliberation, if there is any disagreement among the jurors as to the testimony or if the jurors desire to be informed on any point of law arising in the cause, they must require the officer to conduct them into court. When the jurors are brought into court, the information requested may be given in the discretion of the court. If such information is given, it must be given in the presence of the county attorney and the defendant and his counsel.

Section 46-16-503(2), MCA.

In construing a Wyoming statute similar to the one above, that state's supreme court stated:

This statute does not change the common law rule against submitting testimonial materials to the jury for unsupervised and unrestricted review during deliberations, and it does not permit trial courts to repeat large amounts of testimony just because the jury makes such a request. On the contrary, it requires that the court discover the exact nature of the jury's difficulty, isolate the precise testimony which can solve it, and weigh the probative value of the testimony against the danger of undue emphasis. If, after this careful exercise of discretion, the court decides to repeat some testimony for the jury, it can do so in open court in the presence of the parties or their counsel or under other strictly controlled procedures of which the parties have been notified. [Footnote omitted.] The more testimony the court repeats, the greater the danger of undue emphasis. Even with the best of procedures, it would not be proper under the statue for the court to reread a transcript or replay a videotape of a witness's entire story just because the jury wants to review all of the testimonial matter that happens to be available or because the jury wants to review the general credibility of the witness. Undue emphasis and delay would be too likely.

Chambers, 726 P.2d at 1276.

We agree with the Wyoming court. The kind of request contemplated by § 46-16-503(2), MCA, includes an inquiry concerning a witness's testimony as to the width of a street, the height of an object, distance, time or some other limited request, but not the entire testimony of the witness.

16

The instructions given to the jury before it begins deliberations should include an instruction to submit any requests for information in writing. If the jury submits a written request that the transcript of a witness be read to them, the district court should respond in writing as follows:

> It would be error for me to furnish you with a transcript of any particular witness for the reason that in rendering your verdict, you should not give any undue emphasis to the testimony of any one witness to the exclusion of all others. Instead, you should consider all of the evidence as a whole in rendering your verdict.
>
> However, if you have some particular reason or point that you are trying to resolve that relates to the evidence of this witness, you may submit that question to me in written form, and I will give it consideration.

Through this process, an inquiry concerning a witness's testimony can be narrowed down to such subjects as the width of a street, the height of an object, distance, time or some other limited request.

In this case, the District Court abused its discretion by reading Robby's entire testimony to the jury. The reading of the testimony prejudiced defendant by placing undue emphasis on the statement of the alleged victim to the exclusion of the testimony of other witnesses.

Reversed and remanded for a new trial.

_____
                                    Justice

We Concur:

_____
     Chief Justice

17

_____

/s/ John C. Sheehy

/s/ F. C. McDonough

Justices

/s/ Leonard H. Langen

Hon. Leonard Langen,
District Court Judge,
sitting for Justice Barz

18

Justice Fred J. Weber dissents as follows:

I strongly dissent from the majority opinion. I also concur in Mr. Justice Harrison's dissent which demonstrates how the majority is proceeding in the opposite direction from the majority of jurisdictions in the area of expert testimony in child sexual abuse cases. I recognize the good faith attempt on the part of the majority to address a very perplexing area of the law of evidence. The tragic result is that we have severely handicapped the capacity of the judicial system to prosecute adults who commit sexual offenses upon very young children.

Rule 702, M.R.Evid., details the testimony to be allowed by experts:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

In the present case we have the specialized knowledge of Ms. Sandi Burns who is an acknowledged expert in the area of sexual abuse. The extensive testimony on the part of Ms. Burns clearly assisted the trier of fact to understand evidence given by the children and to determine key facts in issue with regard to the charges of sexual abuse.

The testimony sets forth the key professional qualifications on the part of the witnesses who testified in this case as experts in the area of child sexual abuse. Janey was taken by her mother to her pediatrician on the day after her mother observed Janey's

19

problems. That pediatrician testified that she had special training regarding the diagnosis of sexual abuse in small children, and that she currently was on the Yellowstone Valley Sexual Abuse Team. While she could not recall the exact number of sexual abuse cases with which she had been involved, she estimated a total of 50 to 75 cases. She testified she had been in court proceedings on sexual abuse on 10 or 15 different occasions. She is the medical witness who testified with regard to the bruises and abrasions which were consistent with sexual abuse.

The defendant called a Billings pediatrician who testified with regard to his examination of the children. He has practiced pediatrics in Billings since 1953. He estimates that he has examined from 25 to 30 children for sexual abuse. He testified he found no evidence of sexual abuse in the two children.

Ms. Sandi Burns testified with regard to her examination and treatment of Janey and Robby. Ms. Burns has been engaged in psychotherapy for approximately ten and one-half years in the Billings area. She has two masters degrees in counseling and psychology from Arizona State University. She is licensed by Montana as a professional counselor, and is licensed nationally as a certified counselor. She has specialized in sexual abuse cases for over ten years, and a majority of her case load consists of the diagnosis and treatment of child sexual abuse. She sees an average of 50 sexual abuse patients a weeks. She testified that she has handled approximately 1500 cases of child sexual abuse in the past 10 years. Her patients come from all parts of Montana and from out

20

of state. She has taught approximately 35 to 40 workshops a year for the FBI, social workers, school districts, teachers, counselors and nurses. Ms. Burns was charged with the diagnosis and treatment of both Janey and Robby.

It is apparent from the record that the treatment of medical doctors in sexual abuse cases is limited to caring for the patients until they have physically recovered from any harm. The treatment of the mental and emotional aspects of sexual abuse with minor children is left to such experts as Ms. Burns. Note that the two pediatricians who testified as experts together have not seen one-tenth of the patients seen by Ms. Burns in the past ten years. Their total is less than 150 as compared to Ms. Burns' 1500 cases. I emphasize this because Rule 702 emphasizes that if specialized knowledge will assist the trier of fact, a witness qualified by knowledge, skill, experience and training may testify. Applying that rationale suggests that Ms. Burns has more qualification by experience than medical doctors who see far fewer cases and spend a limited amount of time with the children.

The majority opinion states that because a therapist does not see a child for treatment unless there has been a claim of sexual abuse, the therapist is arguably predisposed to confirm the abuse, which has a negative impact on the trustworthiness of the hearsay statement. The majority further concludes that the circumstances in which the therapist hears the statement are not generally such that a hearsay statement will possess circumstantial guarantees of trustworthiness. I am shocked that such statements are made in

21

this case. Such statements might have been appropriate in cases where unqualified persons were testifying as to sexual abuse. That is not the case here. In Ms. Burns we have the expert's expert--the person to whom the pediatrician referred the children for treatment--the person with the best experience to evaluate and treat sexual abuse. If the logic of the majority opinion is applied in other areas, it would appear that we should mistrust the testimony of a medical doctor because his patient was sent to him for diagnosis and potential treatment. The statements are totally unsupportable. Such a conclusion is particularly inappropriate in this case where Ms. Burns is one of the most qualified persons in the area of sexual abuse in the state of Montana.

I

Did Ms. Burns improperly comment on the credibility of the alleged victims?

In Part I of the majority opinion, the majority emphasizes that the credibility of six year old Robby was not called into question by the defendant, and therefore concludes that it was reversible error to allow Ms. Burns to comment directly on Robby's trustworthiness. She had testified that Robby was a little, honest, open country boy who appeared to be a pretty trustworthy child and very honest.

Ms. Burns testified to a number of factors which must be taken into consideration before she can reach conclusions with regard to a child abuse victim. She illustrated how Janey initially was unable to talk freely with her, and explained how she established

22

the facts so far as Janey was concerned. Ms. Burns' testimony demonstrated that fear is one of the weapons frequently used by the adult sexual abuser upon a child victim. It is reasonable to conclude that the inability of Janey to testify in the present case was based upon such fear. That is particularly true because the trial judge found that she was unable to testify because of fear. Ms. Burns testified that Robby was extremely fearful because of threats made by the defendant and her husband. While it is fortunate that Robby was able to testify at trial, we have no assurance he will be able to testify on retrial. As pointed out by Ms. Burns, that may depend upon his mental and emotional state at the time of retrial.

As emphasized by Ms. Burns, experts in this field recognize that children sometimes have difficulty telling their story--they frequently deny the occurrence of the sexual abuse at various times--if the occasions present reasons for them to become fearful, they will refuse to testify, or contradict testimony previously given.

The testimony of Robby which the Court finds so persuasive is a demonstration of the problems in this area. On retrial we have no assurance that Robby will still be able to testify openly. If he is further threatened, or he recalls the previous threats made, he may choose to deny ever having testified as he did. Should that be the case, the person best able to discern the truth is the psychologist-therapist who has met day after day and week after week with the patient, and based upon her experience, as she did

in the present case, reached a conclusion regarding the truthfulness of the statements.

We have applied a rule which may be applicable in adult witness cases but is totally inappropriate here. The testimony of Ms. Burns was clearly helpful to the trier of fact to determine whether or not Robby was telling the truth and whether or not he accurately told what had happened to him and to Janey.

In other types of cases we conclude that an expert may testify on aspects bearing on the ultimate fact to be determined by the jury. We recognize that experts can be properly evaluated by the jury. Based upon the extensive knowledge, experience and training of the expert, it seems appropriate under Rule 702, M.R.Evid., to allow the expert to assist the jury to determine the facts in issue. Obviously few jurors have background or experience dealing with child sexual abuse with which to evaluate reactions on the part of child abuse victims.

I conclude that it was not reversible error to allow Ms. Burns to testify as to the credibility of Robby. We should encourage the giving of this essential information to jurors, the triers of fact.

II

Did the District Court err in allowing Ms. Burns to identify the defendant as the perpetrator of the alleged crimes by testifying as to hearsay statements made to her by the victims during the course of therapy?

In discussing whether or not the evidence was admissible under Rule 803(4), M.R.Evid., the medical diagnosis and treatment

24

exception, the majority emphasized that the reliability of the medical treatment exception is assured because the declarant who seeks medical treatment possesses a selfish motive to tell the truth and we may therefore assume that the declarant was telling the truth. That ignores the wording of our Rule 803(4), which provides that statements made for either medical diagnosis or treatment are admissible. Statements made for medical diagnosis are not presumably reliable because the declarant may only be attempting to establish a claim, with no intent to seek treatment from that expert witness. In fact, the argument is probably stronger for allowing Ms. Burns, the highly qualified expert, to testify than it would have been for a medical doctor testifying as to diagnosis. We emphasize this because the information was stated by Ms. Burns to be essential to her treatment.

I also disagree with the narrow construction of the majority on the residual exception to hearsay Rule 804(b)(5). In the guidelines contained in State v. J.C.E. (1988), 235 Mont. 264, 767 P.2d 309, we pointed out that the main components of such testimony may well include the following:

a. Whether the act alleged can be corroborated.

b. If the child's statement identifies a perpetrator, whether that identity can be corroborated.

We emphasized that the admissibility of the evidence remains in the discretion of the trial judge.

The majority opinion concludes that because six year old Robby was able to link the defendant to the sexual assault, the identification by the expert through hearsay statements was only

25

cumulative. Unfortunately, we have no assurance that Robby's testimony will be available on retrial. Because of the extent of Ms. Burns' expertise and the difficulty of ascertaining the extent to which a young child may have told the truth, I conclude that Ms. Burns' testimony is clearly the most probative evidence to help the jury evaluate Robby's testimony.

Again, I emphasize that we treat these child witnesses as though they were adults. The testimony by Ms. Burns and other experts establishes that it is not appropriate to apply the same standards as are applied to adults.

I conclude that the preliminary protections of Rule 804(b)(5) have been met in this case and that the hearsay was properly admitted. I am disturbed by the conclusion on the part of the majority that it is only in an extraordinary case that hearsay statements by a therapist, concerning either the identify of the perpetrator or the nature of the abuse, possess sufficient circumstantial guarantees to be admissible. There is no factual basis for such a conclusion.

## Summary

The tragic result is that we have rather casually reversed a conviction with overwhelming evidence establishing the guilt of the defendant. We have created multiple dilemmas: for the parents of both Janey and Robby the dilemma is whether or not to allow their children to go through the hurtful and frightening process of another trial. The dilemma on the part of the prosecution is

26

whether they will be able to put together sufficient allowable evidence to convict the defendant so as to warrant their insistence that the children and parents go through the painful retrial process.

While our intentions have been of the very best, we have now reversed the convictions as to both defendant Harris and her husband. Defendant Harris has been found guilty by a jury based on overwhelming evidence. Our pursuit of justice leads to strange and tragic results as we reverse.

_____
Justice

Justice John Conway Harrison dissenting.

I concur in Mr. Justice Weber's dissent and add to it the fact that Sandi Burns has testified as an expert witness not only in numerous other states but before the federal courts and is used by the Federal Bureau of Investigation as an expert witness. We find ourselves in an amazing situation of denying her testimony under Rule 804(b)(5) in a state court in Montana, yet if she were testifying to the same fact situation in a federal court in Montana, her testimony would be received.

While the question regarding the admissibility of psychiatric and psychological testimony in child abuse actions arises in criminal cases, the same principles of these decisions, in my opinion, should also have some applicability in civil actions.

Child abuse cases have increased dramatically over the past decade. An estimated one in five females suffers from sexual abuse as a child. However, in two-thirds of child abuse cases, the incident is never reported. Morgan v. Foretich (4th Cir. 1988), 846 F.2d 941, 943. Even when abuse is reported, convictions are few. Because the sole witness is often a very young child who may be incompetent to testify at trial and because physical evidence is frequently lacking, prosecution is difficult. Id. Thus, the admission of a child's statements made to adults at the time of discovery of the abuse and during the course of therapy is crucial to the State's case. According to the comments to the Federal Rules of Evidence, "[w]hen the choice is between evidence which is less than best and no evidence at all, only clear folly would dictate an across-the-board policy of doing without." Fed.R.Evid.

art. VIII advisory committee's note.

In child abuse cases, federal courts have admitted statements of children made to psychologists and social workers, as well as physicians, under the medical exception to the hearsay rule, Rule 803(4), Fed.R.Evid., identical to the Montana rule. Morgan, 846 F.2d at 949; United States v. DeNoyer (8th Cir. 1987), 811 F.2d 436, 438; United States v. Nick (9th Cir. 1979), 604 F.2d 1199, 1201-1202. In fact, the advisory committee note to Rule 803(4) states that "[u]nder the exception the statement need not have been made to a physician. Statements to hospital attendants, ambulance drivers, or even members of the family might be included." Fed.R.Evid. 803(4) advisory committee's note.

Federal courts have instituted a two-part test for admitting such statements: (1) the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and (2) the content of the statement must be such as is reasonably relied on by a physician. United States v. Renville (8th Cir. 1985), 779 F.2d 430, 436. Statements made for purposes of medical treatment are frequently admitted into evidence regardless of whether the individual who made the statement is competent to testify at trial. Morgan, 846 F.2d at 949.

In allowing the admission of hearsay statements of a four-year-old child to her treating psychologist, the Fourth Circuit Court of Appeals found that a child's motive to make true statements for the purposes of diagnosis or treatment is as strong or stronger than an adult's. Secondly, the therapist or physician reasonably relies on the child's statements for treatment or diagnosis. Morgan, 846 F.2d at 949. The assailant's identity is

29

one of the factors relied on for treatment in child abuse cases. <u>Renville</u>, 779 F.2d at 436-37; <u>Morgan</u>, 846 F.2d at 950.

The federal cases follow the trend in state courts to allow this type of expert testimony in determining whether a child has been abused. In addition, nearly thirty states have passed legislative exceptions to the hearsay rule allowing individuals to testify to a child's hearsay statements if certain requirements are met.[1] Contrary to the majority's conclusion that statements to a

---

[1] The following states have enacted legislative exceptions to the hearsay rule in child sexual abuse cases: Alabama, Alaska (limited to grand jury testimony), Arkansas, Arizona, California (only for purpose of determining admissibility of defendant's confession), Colorado, Florida, Georgia, Idaho, Illinois, Indiana, Kentucky, Maryland, Minnesota, Mississippi, Nevada, New Hampshire (limited to civil cases to recover damages on behalf of a minor child for abuse or assault), New Jersey (limited to juvenile and family law cases), New York (limited to family law cases), Ohio (limited to juvenile court), Oklahoma, Oregon, Pennsylvania (limited to juvenile and family law cases), South Dakota, Utah, Virginia (limited to civil cases involving child abuse and neglect), and Washington.

Of these, Arizona, Kentucky and Mississippi have declared their statutes unconstitutional on the ground that under their constitutions and state law, the judiciary, rather than the legislature, controls evidentiary rules. See State v. Robinson (Ariz. 1987), 735 P.2d 801; Drumm v. Commonwealth (Ky. 1990), 783 S.W.2d 380; Hall v. State (Miss. 1989), 539 So.2d 1338.

Other states have rebuffed constitutional challenges to child hearsay statutes. See, e.g., St. Clair v. State (Ark. 1990), 783 S.W.2d 835 (separation of powers doctrine does not preclude General Assembly from enacting child hearsay rule); State v. Ramsey (Utah 1989), 782 P.2d 480 (child hearsay statute not void for vagueness); State v. Swan (Wash. 1990), 790 P.2d 610 (defendant's right to confrontation of witness not violated by child hearsay statute).

Typical of the hearsay statutes is the Washington law enacted in 1982, which provides:

> A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings in the courts of the state of Washington if:

child's therapist are unreliable, Maryland's child hearsay statute allows the hearsay only if the statements are made to a licensed physician, psychologist, or social worker. Md. Cts. & Jud. Proc. Code Ann., § 9-103.1 (1989).

Arizona allows expert testimony explaining general behavioral characteristics of child victims on the basis that jurors, most of whom are unfamiliar with the behavioral sciences, might otherwise attribute behaviors of victims to inaccuracy or prevarication. State v. Moran (Ariz. 1986), 728 P.2d 248, 250-252. Arizona also follows the federal rule in admitting child hearsay statements to treating psychologists under the medical exception to the hearsay rule. State v. Robinson (Ariz. 1987), 735 P.2d 801, 809-10.

In Brady v. State (Ind. App. 3 Dist. 1989), 540 N.E.2d 59, 70-71, the Indiana court allowed testimony of a therapist in regard

---

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness: Provided, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to prepare to meet the statement.

Wash. Rev. Code § 9A.44.120 (1988).

to the effects of sexual abuse on preschool age children.

In State v. Kim (Hawaii 1982), 645 P.2d 1330, the court upheld expert testimony as to general characteristics of a child rape victim, including the credibility of the child witness, if the trial court is satisfied "that the expert's contacts with the evaluated witness were such that he had an opportunity to make a thorough and objective assessment." Kim, 645 P.2d at 1336.

In our sister state of Washington in State v. Petrich (Wash. 1984), 683 P.2d 173, the Washington court allowed an expert to describe why sexually abused children often delay reporting the abuse and that the length of delay correlates with the relationship between the abuser and the child. The Washington Supreme Court did not disturb the action of the trial court; it did however find prejudicial the expert's statement that in most instances a child is molested by someone he or she knows.

In State v. Middleton (Or. 1983), 657 P.2d 1215, two social workers testified that the complainant's behavior was consistent with that of other children who reported sexual molestation by a family member. Similarly, in Ward v. State (Fla. App. 1 Dist. 1988), 519 So.2d 1082, the court, in evaluating the testimony of a clinical psychologist commented that "[c]hild abuse syndrome is an area sufficiently developed to permit an expert to testify that the symptoms observed in the evaluated child are consistent with those displayed by victims of child abuse." Ward, 519 So.2d at 1084. See also, Calloway v. State (Fla. App. 1 Dist. 1988), 520 So.2d 665, review denied, 529 So.2d 693 (1988), where a psychologist was allowed to testify as an expert.

In State v. Myers (Minn. 1984), 359 N.W.2d 604, the court

allowed a clinical psychologist to generally describe the behavior and the symptoms typically exhibited by sexually abused children; she was allowed to state her opinion that the child was truthful about having been abused. Following Myers, the Minnesota Court of Appeals recently held that "[e]xpert testimony describing the traits and characteristics typically found in sexually abused children and those the expert had observed in the complainants is admissible. . . . An expert may also testify properly that the child's behavior is consistent with the profile of a sexually abused child." State v. Dana (Minn. App. 1987), 416 N.W.2d 147, 153, rev'd on other grounds, 422 N.W.2d 246 (1988).

The jury is the sole judge of the credibility of witnesses. By not accepting the testimony of Sandi Burns in this case we are denying the jury the opportunity to hear the testimony of one who can add to the jury's ability to fairly decide the factual issues. The majority's statement that a therapist is predisposed to find abuse is unsupported by research or other evidence and is merely a conclusory opinion. I find it more credible that a therapist as experienced as Sandi Burns is better able than a lay witness to detect fabricated statements by children.

The majority's broad assertion that the relationship between a therapist and a child client has a "negative impact on the trustworthiness of the hearsay statements" is equally without foundation. As in this case, children in a sexual abuse situation are often threatened with harm or death to themselves and others if they say anything about the abuse. Thus, a child whose trust is betrayed by an abuser may take weeks or even months to trust an adult before he or she will reveal details of the abuse. As Sandi

Burns testified, the child's statements in therapy are not necessarily made in response to questioning, but may be divulged while the child is at play or through pictures the child draws. A therapist is trained to ask non-leading questions. In any particular case, the trial court needs to assess the circumstances under which the child's statements to a therapist are made, rather than beginning with the insupportable assumption that the statements are inherently unreliable.

Sandi Burns is so well trained and knowledgeable in her field that even medical professionals refer patients to her. I am reluctant to categorically preclude all such testimony as we have done here, since it is virtually the unanimous opinion of commentators that under certain circumstances expert psychiatric testimony may reveal to the trier of fact characteristics or conditions of the witnesses which may assist the jury in the assessment of their credibility. See Saxe, Psychiatry, Psychoanalysis, and the Credibility of Witnesses, 45 Notre Dame Lawyer 238, (1970); Juviler, Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach, 48 Cal.L.Rev. 648 (1960); McCormick, Evidence, Section 45 (1972 ed.).

By our action today, we are, in my opinion, setting back the prosecution of child abuse cases in Montana for years to come.

_____John Conway Harrison_____
Justice

34

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 89-226

STATE OF MONTANA,
          Plaintiff and Respondent,

                                              )
     -v-                                      )     O R D E R
                                              )
KATHRYN HARRIS,
          Defendant and Appellant.


It has been brought to the Court's attention that an error exists on page 20 of the dissent of Justice Fred J. Weber to the opinion in the above case.

IT IS ORDERED that the paragraph commencing at line 10, page 20 of the opinion which reads:

> The defendant called a Billings pediatrician who testified with regard to his examination of the children. He has practiced pediatrics in Billings since 1953. He estimates that he had examined from 25 to 30 children for sexual abuse. He testified he found no evidence of sexual abuse in the two children.

Is changed to read as follows:

> The defendant called a Billings pediatrician who testified as an expert with regard to his examination of children for sexual abuse. He has practiced pediatrics in Billings since 1953. He estimated that he has examined from 25 to 30 children for sexual abuse during that time.

IT IS FURTHER ORDERED that the Clerk of this Court is directed to mail a copy of this order to:

Gary E. Wilcox
Attorney for Appellant
P.O. Box 30522
Billings, Montana 59107

Marc Racicot, Attorney General
State of Montana
Helena, Montana

FILED

FEB 19 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk of the District Court
Fourteenth Judicial District
Musselshell County
Roundup, Montana 59072

<u>State Reporter</u>, Helena, Montana

<u>West Publishing Co.</u>, St. Paul, Minnesota

DATED this 19th day of February, 1991.

_____
Justice