No. 90-261

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

    Plaintiff and Respondent,

-vs-

JOSEPH P. HENSLEY,

    Defendant and Appellant.

FILED

NOV 19 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        James G. Hunt, Dix and Hunt Law Firm, Helena,
Montana.

    For Respondent:

        Marc Racicot, Attorney General, Helena, Montana;
Jennifer M. Anders, Assistant Attorney General,
Helena, Montana; Scott B. Spencer, Lincoln County
Attorney, Libby, Montana.

Submitted on briefs: September 9, 1991

Decided: November 19, 1991

Filed:

_____
Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Defendant, Joseph Hensley, appeals from a decision by a jury of the Nineteenth Judicial District, Lincoln County, convicting him of sexual intercourse without consent. Hensley was sentenced to 20 years in prison. We reverse and remand for a new trial.

The issues on appeal are:

1. Whether the District Court erred in admitting the testimony of Ann Anderson, a social worker regarding the credibility of a sexual abuse victim.

2. Whether the District Court erred in allowing Ann Anderson to testify about another report of abuse concerning defendant's wife and son.

3. Did the District Court err in considering the results of defendant's polygraph examination for sentencing?

4. Did the District Court err in refusing to allow defense witness to testify on rebuttal?

Defendant Joseph Hensley, was convicted of molesting his natural daughter, E.H., between 1980 and 1985 while they resided in Lincoln County. According to the allegations made by E.H., Joseph Hensley entered her room two or three times a week between 1980 and 1985. According to E.H.'s testimony, the defendant performed oral sex on her, digital penetration, and at times, made her massage his penis.

The victim did not report these instances to anyone until 1989 when after arguing with her mother, her mother threatened to send E.H. to live with her father in California. Because E.H. and her

mother were not getting along at the time, E.H. was living with another woman in the community. This woman encouraged E.H. to report the incidents because E.H. was having trouble sleeping at night. E.H. reported the incidents, first to Pat Warneke, a probation officer, then to Ann Anderson, a social worker for the Department of Family Services.

On August 10, 1989, an information was filed in Lincoln County District Court charging Hensley with sexual intercourse without consent. On January 4, 1990, the defendant was convicted of the above crime. This appeal followed.

I

Whether the District Court erred in admitting the testimony of Ann Anderson, a social worker, regarding the credibility of a child abuse victim.

At trial, E.H. testified that the family lived in three different trailers during the time the incidents took place. When the family moved into the first trailer E.H. testified she shared a bedroom with her two brothers. Approximately halfway through their stay in the first trailer she moved into her own room. From then on E.H. testified she had her own room unless relatives, most often her grandmother, came to visit. During these visits, E.H. bunked with her brother, but most of the time she stayed on the couch.

Testimony from other family members indicated that E.H.'s grandmother shared a room with E.H. for extensive periods of time during the five year period. E.H.'s younger brother testified he

3

never saw their father go into E.H.'s room at night. E.H.'s mother testified on cross-examination that she thought E.H. was lying about the allegations E.H. made against her father.

The State called Ann Anderson, a social worker, as a rebuttal witness. The testimony was admitted after objection by the defendant. Anderson testified as follows:

Q. And do you have any reason to doubt E.H.'s truthfulness in this case?
A. No I don't.
Q. Has there been anything that you have seen that you are trained in professionally that you use to judge her truthfulness that indicates she is untruthful?
A. No.

We have previously stated that the credibility of a witness lies exclusively within the province of the trier of fact. "Expert testimony regarding credibility improperly invades the jury's function by placing a stamp of scientific legitimacy on the victim's allegations. Therefore, we generally will not allow an expert witness to comment on the credibility of the alleged victim." State v. Harris (1991), 48 St. Rep. 62, 63, 808 P.2d 453, 455. (Citations omitted.)

However, we have carved out an exception to the rule in the instance that a young child makes an allegation of sexual abuse and expert testimony could assist the jury. Id. at 455. The exception is further narrowed in that the child must testify at trial, the child's credibility must be brought into question, and the expert witness must be properly qualified. State v. Sheffelman (1991),___ Mont.___, ___ P.2d___, (Cause No. 90-220, decided November 18, 1991). Here the qualifications of the expert were not challenged.

Under the circumstances of this case, when E.H. testified at trial she was approximately one month shy of seventeen years of age. She testified that her father sexually abused her over a five year period. She further testified that she had her own room for the majority of time during those five years. E.H.'s two brothers, her father and mother contradicted that testimony, alleging that E.H.'s grandmother and brother often visited the family home which necessitated that E.H. share her room. E.H.'s credibility was brought into question when E.H.'s mother testified, in response to a question on cross-examination by the county attorney, that she thought E.H. was lying about the allegations E.H. made against her father.

Even assuming that E.H.'s credibility was properly challenged, there is a question as to whether the testimony of Ann Anderson regarding this sixteen year-old's credibility was proper.

Our earlier cases in which we allowed expert testimony as to the credibility of a child sexual abuse victim involve very young children. In State v. Geyman (1986) 224 Mont. 194, 729 P.2d 475, the victim was nine years old. In State v. French (1988), 233 Mont. 364, 760 P.2d 86, we upheld the district court's ruling that the school counselor could offer opinion testimony that the six year old victim was telling the truth.

Commentators have suggested that in limited circumstances an expert witness may aid the jury by testifying on the credibility of the child witness. Myers, Expert Testimony in Child Sexual Abuse Litigation, 68 Neb.L.Rev. 121, 127 (1989):

5

[w]hile qualified experts possess specialized knowledge regarding certain aspects of credibility, expert capacity to detect lying and coaching is too limited to justify admission of generalized credibility testimony.

While generalized credibility testimony is properly excluded, circumstances exist where narrowly tailored expert testimony may be proper to rebut certain attacks on credibility. For example, if the defense asserts or intimates strongly that children as a group lie about sexual abuse, it seems fair to permit rebuttal expert testimony . . .

In State v. Haseltine (1984), 120 Wis.2d 92, 352 N.W.2d 673, the Wisconsin Appeals Court held it was error to admit expert testimony as to whether a sixteen year old was an incest victim. The court said, "No witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth." The court went on to distinguish this case from other sexual abuse cases where expert testimony would be helpful to the jury. Here E.H. was sixteen years old, was a competent witness, and was under no physical or mental disability. A jury is capable of assessing the credibility of such a witness. We conclude the admission of this testimony was erroneous and is reversible error.

II

Whether the District Court erred in allowing Ann Anderson to testify about another report of abuse concerning defendant's wife and his son.

At the time of trial Hensley, through his counsel, objected to testimony by Ann Anderson regarding an earlier report of abuse involving defendant's wife and son on relevancy grounds. We agree with the defendant and hold that the testimony was irrelevant to

6

defendant's guilt or innocence, which was the sole issue at trial.

III

Did the District Court err in considering the results of defendant's polygraph examination during sentencing?

Section 37-62-302, MCA, provides that: "[r]esults of a polygraph examination or other test given by an examiner may not be introduced or admitted as evidence in a court of law." In expanding this section we have prohibited the introduction of polygraph examination results in any proceedings in Montana courts of law. State v. Staat (1991), 48 St.Rep. 331, 811 P.2d 1261. The introduction and consideration of the results of a polygraph examination was erroneous.

IV

Did the District Court err in refusing to allow a defense witness to testify on rebuttal?

Because we reverse and remand for a new trial, we do not address this issue on appeal.

This judgment is reversed and the cause is remanded to the District Court for a new trial.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

Justice William E. Hunt, Sr., did not participate in this decision.

7

Justice Terry N. Trieweiler dissenting in part and concurring in part.

I dissent from the opinion of the majority. I would affirm the District Court.

Ann Anderson is a social worker who, at the time of trial, had been employed by the State Department of Family Services for the previous 11 years. She had a master's degree in social work. Her professional duties related primarily to the investigation of sexual abuse cases. In the ten years prior to giving her testimony, she had participated in the investigation of approximately 240 such cases. In addition, she had attended a number of workshops every year that dealt with sexual abuse, and had been trained to investigate complaints and evaluate their veracity.

Ms. Anderson testified that she was responsible for investigating the complaint of the victim in this case, and in the course of that investigation had talked to her many times. Ms. Anderson explained what types of behavior social workers look for in evaluating the veracity of similar complaints, and answered questions about whether those forms of behavior existed in this case. For example, she explained what the appropriate emotional reaction is for a victim of sexual abuse, and the type of detail that would be expected from a victim when he or she describes the abuse that allegedly occurred. She explained how this victim's conduct compared to what she would expect to see from a victim of

8

abuse, and she testified to the absence of behavior that would indicate fabrication on the part of this victim. That small portion of her testimony which is quoted by the majority has to be put in the above context to be understood. This is not a case where this witness expressed an opinion that the victim was or was not testifying truthfully. Therefore, the authorities relied upon by the majority are not proper authority for the reversal of defendant's conviction. Neither do I believe that this case is controlled by *State v. Harris* (Mont. 1991), 808 P.2d 453, 455, 48 St.Rep. 62, 63. This case is different than *Harris* because in this case the victim's credibility was clearly challenged by the defendant.

I do believe that the testimony of Ms. Anderson provided specific examples of the victim's past conduct in an effort to buttress her credibility. Therefore, I would conclude that her testimony was a violation of Rule 608(b), M.R.Evid., which provides, in relevant part, that:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, may not be proved by extrinsic evidence.

Even though I have concluded that Ms. Anderson's testimony violated Rule 608(b), I would not reverse defendant's conviction because her testimony was never properly objected to on that basis. Without a proper objection, the District Court had no adequate opportunity to consider the admissibility of the testimony and the

9

State could not exercise its option of withdrawing the testimony based on an appropriate objection.

Section 46-20-104(2), MCA, provides that:

> Upon appeal from a judgment, the court may review the verdict or decision and any alleged error objected to which involves the merits or necessarily affects the judgment. Failure to make a timely objection during trial constitutes a waiver of the objection except as provided in 46-20-701(2).

None of those exceptions provided for in § 46-20-701(2), MCA, are present in this case.

Section 46-16-201, MCA, provides that the rules of evidence in civil actions are also applicable to criminal actions, except where otherwise provided. Rule 103(a), M.R.Evid., provides, in part, as follows:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected <u>and</u>
> (1) . . . a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context . . . . [Emphasis added.]

In this case, Ms. Anderson's testimony was only objected to by defendant for the reason that, "it is not proper rebuttal." However, when given an opportunity to argue the basis for his objection in chambers and outside the presence of the jury, counsel for defendant admitted that he had challenged the victim's veracity. The following conversation occurred, including defendant's attorney and the court:

> THE COURT: The defense has stated in so many words that this complaining witness is lying.

10

MR. SHAFFER: That is correct.

Ms. Anderson's testimony was never objected to by defendant as a violation of Rule 608(b). Nor was it ever objected to for the reason that it constituted a comment on the credibility of a witness. Those arguments have been persuasively made by the attorney representing defendant on appeal. However, he is not the same attorney who represented defendant at trial; and unfortunately for everyone involved, those arguments were not made at the time of trial.

Because of the rules for preserving objections, and because of their importance in achieving fairness to the parties in the trial court, I would affirm the jury's verdict, even though I conclude that the testimony of Ms. Anderson was inadmissible under Rule 608(b).

Neither would I reverse this case on the basis of Ms. Anderson's reference to her investigation of sexual abuse of Joey Hensley.

Jane Hensley, the victim's mother, testified during defendant's case that in her opinion her daughter was lying when she accused her father of sexual abuse. Following that testimony, during the State's rebuttal, Ms. Anderson was asked about Jane Hensley's own reputation for truthfulness. Evidence of a witness's reputation for being untruthful is admissible pursuant to § 26-1-302, MCA. However, there has to be some factual foundation for a witness's ability to offer such testimony. In this case,

11

that foundation was laid by having Ms. Anderson testify that she was familiar with Jane Hensley based upon her earlier investigation of alleged abuse of Joey Hensley. She stated that in the course of that investigation she talked to a number of people, including school counselors and probation officers, and that based upon those conversations she was able to conclude that Jane Hensley had a poor reputation for truthfulness.

Ms. Anderson's testimony regarding the investigation of sexual abuse involving Joey Hensley was objected to for the reason that when that abuse was alleged to have occurred defendant was living in California. The District Court offered to give an instruction making clear to the jury that defendant was not the subject of those allegations.

Under Rule 403, M.R.Evid., it was up to the District Court to determine whether the prejudicial effect of Ms. Anderson's testimony was outweighed by its probative value. In balancing those factors, deference should be paid to the District Court unless there has been an abuse of discretion. *Cooper v. Rosston* (1988), 232 Mont. 186, 190, 756 P.2d 1125, 1127. In this case, where it was clear that because of his absence from the state defendant was not involved in the other incident of sexual abuse, and where the District Court offered to make that clearer by so instructing the jury, I would conclude that there was no abuse of discretion in allowing Ms. Anderson's testimony as part of the

necessary foundation for her opinion regarding Jane Hensley's reputation for truthfulness.

Finally, I concur with the majority's opinion that the results of polygraph examinations should not be included in material submitted to the District Court as part of the presentence investigation. I would remand to the District Court for resentencing and order that any reference to the polygraph examination, or its results, be stricken from the materials considered by the District Court in determining the appropriate sentence for defendant. In so holding, I would note that there is no evidence in this record that the District Court improperly considered defendant's polygraph results in arriving at the sentence which was imposed. However, for purposes of providing a guideline for use in future presentence investigation, I believe the better rule is to set aside any sentence imposed after consideration of a report which includes the results of a polygraph examination.

For these reasons, I would affirm defendant's conviction of sexual intercourse without consent and remand this case to the District Court for resentencing pursuant to that conviction.

_____
Justice

13

Justice Fred J. Weber dissents as follows:

I dissent from the majority holding on Issue I which is whether it was error to admit the testimony of Ann Anderson, a social worker, regarding credibility of a sexual abuse victim.

The majority has emphasized that the complaining witness was almost 17 at the time of trial and used age as the foundation for reversal. It is important to note that the defendant was convicted of molesting his daughter between the years 1980 and 1985. The trial took place in January 1990, essentially ten years after the beginning of the acts in question. While it is true that the complaining witness was almost 17 at trial, it is also true that she was between the ages of 7 and 12 when the offenses occurred.

The majority disapproves of the following testimony:

> Q. And do you have any reason to doubt E.H.'s truthfulness in this case?
> A. No I don't.
> Q. Has there been anything that you have seen that you are trained in professionally that you use to judge her truthfulness that indicates she is untruthful?
> A. No.

The majority opinion quotes from State v. Haseltine (1984), 120 Wis.2nd 92, 352 N.W.2d 673, 676, where the court said "No witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth." Even if we accept the Wisconsin authority, I question that the case is good authority when the actual questions and answers are considered in this case. Initially Ann Anderson had been asked a number of questions which established her expert capacity in this area. Then she was asked if she had any reason to doubt the

14

witness' truthfulness and answered that she did not. That is not the same as saying the witness had told the truth. It is an application of her professional training to the conduct of the witness. Next she was asked if there was anything in her professional training which she used to judge truthfulness which indicated to her that the witness was being untruthful. To that she answered "no". Again, this is an application of her professional training to the evaluation of the conduct of the witness. It is not the same as an opinion that the witness was "telling the truth." I would therefore clearly distinguish from State v. Haseltine.

The testimony established that as a social worker, Ann Anderson had worked for ten years in the areas of sexual abuse and had handled approximately two sexual abuse cases per month during those ten years. As I review her testimony, it was clearly admissible as it was not so much a specific comment on credibility as an explanation of how the conduct of this girl was consistent with the conduct of a sexual abuse victim.

I believe the facts in this case bring it within the exception referred to by the majority in State v. Scheffelman (1991), ____ P.2d ___, ____ St.Rep. ___, (Cause No. 90-220, decided November 18, 1991). Under that case, the exception can be applied where the child testifies at trial, where the child's credibility is brought into question, and the expert witness has been qualified. Here the complaining witness did testify at trial and was subject to cross examination. Here the credibility of the complaining witness was

15

challenged by her mother, her two brothers, and the defendant father, who testified that he had never made any type of improper physical contact and that he had disowned his daughter and she was "out of the family." I conclude that the evidence clearly establishes that all three elements of the Scheffelman test were met with regard to Ann Anderson.

After concluding that the Scheffelman test has been met, I further conclude there was a clear benefit to the jury as trier of fact in receiving the testimony of Ann Anderson. The first benefit was that it gave some additional basis for evaluating the contradictory testimony on the part of the various members of the family of the complaining witness. The second benefit is that it assisted the jury in its evaluation of the testimony of a 16-17 year old as she related the circumstances of assaults which had occurred ten years earlier. That benefit is strengthened because of the necessity that the jury evaluate the long delay in reporting such assaults of ten years earlier.

I recognize the discomfort on the part of the majority at allowing an expert to testify where the complaining witness is almost 17 years of age, and the argument that this may be an improper strengthening of the testimony of a mentally and physically competent witness. A review of our sexual abuse cases indicates the state of flux of the law of evidence in the State of Montana. I have not found a particular basis for concluding that an expert should not be allowed to testify because the complaining witness is 16-17 years of age. I do not find anything automatic on

16

the age factor, and in particular where the sexual abuse occurred approximately ten years earlier. I believe that the testimony of the expert was of real assistance in this case. The basic reason is that the jury did not have an adequate background based on its own experience to evaluate the contradictory testimony and the testimony of the complaining witness which stretches over a ten year period and goes back to age 7. The testimony of the expert was helpful to the jury in evaluating testimony by a 16-17 year old as to conduct and responses on her part between the ages of 7 and 12 years of age, an area in which the jury could not be expected to have expertise.

I further suggest that the standard we are setting here will be of questionable value in the future. How is the age standard to be applied? Is it to be based upon an after-the-fact evaluation of a complaining witness? If we have a brilliant 12 year old, capable of good self expression, should a conviction be reversed because of the use of an expert witness? Basically I question the theory of using age alone as a disqualifying factor. Careful analysis may well demonstrate that an expert witness may be of assistance to the trier of fact even where the complaining witness is 17 or older. I have attempted to show that such a careful analysis here clearly demonstrates the very real assistance given by the expert witness to the jury as trier of fact.

I would affirm on this issue.

Justice

17