NO. 93-188

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

 Plaintiff and Respondent,

 v.

ROBERT JOHN EKLUND,

 Defendant and Appellant.

FILED

APR 5 - 1994

*J. Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eleventh Judicial District,
      In and for the County of Flathead,
      The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

 For Appellant:

   Patrick D. Sherlock, Sherlock & Nardi,
   Kalispell, Montana

 For Respondent:

   Hon. Joseph P. Mazurek, Attorney General,
   George Schunk, Assistant Attorney General,
   Helena, Montana

   Thomas J. Esch, Flathead County Attorney,
   Ed Corrigan, Deputy Flathead County
   Attorney, Kalispell, Montana

Submitted on Briefs: February 3, 1994

Decided: April 5, 1994

Filed:

_____
Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Defendant Robert John Eklund was found guilty of sexual intercourse without consent following a jury trial in the District Court for the Eleventh Judicial District, Flathead County. Eklund moved to dismiss the charge due to lack of a speedy trial, and moved for a mistrial contending that the court allowed the State to introduce inadmissible character evidence at trial. The District Court denied both motions. Eklund appeals.

We affirm in part, reverse in part, and remand for retrial.

The issues are:

1. Was Eklund denied a speedy trial since 197 days elapsed between his arrest and his trial?

2. Did the District Court err in allowing character evidence to be introduced during cross-examination of Eklund's character witness?

In June 1992, a neighbor of Eklund's estranged wife reported to the Department of Family Services that Eklund's 13-year-old stepdaughter, J.L., had told her that Eklund had molested her. J.L. stated that the alleged offenses occurred in early April 1992, when she and Eklund's natural children, six-year-old B.E. and five-year-old A.E., stayed two weekends at Eklund's house. She and Eklund had slept on separate couches in the living room where the television was, while the other two children slept in another room. She alleged that before he sexually molested her he ordered her to take her clothes off, and that she complied because she was afraid he would hit her. Eklund denied that the acts took place or that

2

J.L. slept in the living room with him during the visits. He stated that his house guest and renter, who were staying with him during the time of the alleged occurrences, would confirm his version.

On June 24, 1992, prior to his arrest for the present charges, Eklund was arrested and incarcerated on contempt charges for failing meet a release condition resulting from a conviction for driving under the influence. Therefore, on July 7, 1992, when Eklund was arrested for charges of sexual intercourse without consent, he was already incarcerated. On September 2, 1992, Eklund was arraigned and pled not guilty to the charge.

On October 29, 1992, the court denied Eklund's motion to dismiss for delay of his arraignment until September 2, 1992. Also, on January 13, 1993, the court denied his motion to dismiss for lack of speedy trial after finding that he was not prejudiced by the delay. A jury trial was held on January 19 and 20, 1993. During trial, Eklund called Dave Svinth as a character witness. Svinth testified about Eklund's good relationship with his children and his nonviolent behavior toward them. In rebuttal to Svinth's testimony, during cross-examination the State questioned him concerning Eklund's numerous driving under the influence offenses, prior incarceration, alcohol abuse, and murder charges in 1974. The court denied Eklund's objections to the evidence as inadmissible character evidence. On January 20, 1993, Eklund moved for a mistrial, which the court also denied.

3

The jury found Eklund guilty of sexual intercourse without consent.  The court classified Eklund as a dangerous offender and sentenced him to 40 years at the Montana State Prison.  Eklund appeals.

<u>ISSUE 1</u>

Was Eklund denied a speedy trial since 197 days elapsed between his arrest and his trial?

Eklund was arrested on July 7, 1992, and was incarcerated at all times prior to his trial beginning on January 19, 1993, resulting in a delay of 197 days.  Eklund argues that the delay violates his right to a speedy trial under the Sixth Amendment to the United States Constitution, and Article II, Section 24, of the Montana Constitution.  We disagree.

Whether a defendant's constitutional right to a speedy trial has been violated is determined by a four-part test set out in Barker v. Wingo (1972), 407 U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 2d 101, 117.  The four-part test was adopted by this Court in State ex rel. Briceno v. District Court (1977), 173 Mont. 516, 518, 568 P.2d 162, 163-64.  A sensitive balancing of the following four factors determines whether a defendant was denied a speedy trial:  (1) the length of the delay: (2) the reason for the delay; (3) the assertion of the right by the defendant; and (4) prejudice to the defendant.  State v. Thompson (Mont. 1993), 865 P.2d 1125, 1135.  All four factors are weighed by considering the facts and circumstances of each case.  <u>Thomoson,</u> 865 P.2d at 1135.

4

The first factor of the Barker test, length of delay, triggers further inquiry into the other three factors; it is not necessary to consider the other factors unless the length of the delay is presumptively prejudicial. ThomDson, 865 P.2d at 1134. When considering the length of delay, no regard is given to which party caused the delay. ThomDson, 865 P.2d at 1135. A delay of over 200 days will usually trigger further analysis. Thompson, 865 P.2d at 1135. In State v. Bartnes (1988), 234 Mont. 522, 764 P.2d 1271, this Court completed a full analysis where there was a delay of 175 days. Here, 197 days is presumptively prejudicial to Eklund, given the close proximity to the 200-day trigger. The State has the burden to provide reasonable explanation for the delay and to show that Eklund was not prejudiced by the delay. State v. Curtis (1990), 241 Mont. 288, 299, 787 P.2d 306, 314. In analyzing the three remaining factors, no particular factor is determinative. ThomDson, 865 P.2d at 1135.

The second factor of the Barker test, reason for the delay, is analyzed by first allocating delay to the responsible party. ThomDson, 865 P.2d at 1135. Here, the State and Eklund agree that the reason for the delay was institutional due to the clogged court system. The delay is chargeable to the State, however, institutional delay "weighs less heavily against the State than does purposeful delay." ThomDson, 865 P.2d at 1135.

Both parties agree that the third factor of the Barker test, the defendant's assertion of the right to a speedy trial, has been met.

The fourth factor of the Barker test, prejudice to the defendant, is analyzed by considering its three parts: (1) pretrial incarceration: (2) anxiety and concern; and (3) impairment of defense, the most critical factor. Thompson, 865 P.2d at 1135. After applying these three parts of the fourth factor to this case we conclude that Eklund was not prejudiced by the delay.

Eklund argues that he has met the requirement of pretrial incarceration because he was incarcerated at all times prior to his trial. The State argues that he would have been incarcerated regardless of the pending charge and trial due to his incarceration for an unrelated offense. Eklund replies that the State's argument is weak because Eklund's memorandum for motion to dismiss for lack of speedy trial stated that the Justice Court would release him from the sentence for his driving under the influence offense if released from the present charges. Our review of the record fails to show sufficient evidence to resolve this argument. However, based on the further discussion in this opinion we need not decide this point.

Eklund argues that he has met the next part, anxiety and concern, because anxiety and concern are inherent in the experience of being incarcerated for 197 days. He also argues that due to incarceration he was unable to locate his witnesses, and being separated from his friends caused him anxiety.

The presence of anxiety and concern is difficult for a defendant to prove, and the State is presented with the "near impossible burden of proving that it does not exist." Curtis, 707

6

P.2d at 316. However, the State's burden to show lack of anxiety lessens considerably when marginal evidence of anxiety is presented. Curtis, 787 P.2d at 316. Here, Eklund's argument that he was unable to contact his witnesses and he missed his friends appears to us as marginal evidence.

Eklund argues that he has met impairment of defense, because he was unable to locate his house guest and renter as defense witnesses, and all his witnesses experienced memory loss due to the delay. However, he provides no evidence that his defense was impaired by the delay, and the record reveals that he did not attempt to locate witnesses until they were unavailable.

On January 13, 1993, at the hearing for motion to dismiss for lack of speedy trial, Eklund testified that he knew the location of potential witnesses in July 1992, but waited until October 1992 to locate them for his defense as alibi witnesses. He also testified that he lacked evidence to prove that the witnesses' memories were dimmed because neither he nor his attorney had contacted them.

Eklund next argues that B.E. and A.E., his children who were present in his home during the alleged offenses, had experienced memory loss due to the delay. In State v. Scott (1993), 257 Mont. 454, 459-60, 850 P.2d 286, 289, the defendant argued that due to the delay of his trial, his child witnesses were unable to remember important details concerning whether the defendant sexually assaulted another child, thus impairing his defense. However, this Court stated that the defendant had failed to show how he was prejudiced by providing details of the children's memory loss;

7

rather the children's memory loss was beneficial to the defendant because they could not remember the circumstances of the offense and give testimony against the defendant that he sexually assaulted the child. Here, at the end of the trial and at Eklund's request, B.E. and A.E. were examined by counsel and the court: after the examination neither child was called to testify. Neither of the children's transcripts support that their testimony would have benefitted his defense, and he fails to show how he was prejudiced. We hold that the District Court did not err in denying Eklund's motion to dismiss for lack of speedy trial.

<u>ISSUE 2</u>

Did the District Court err in allowing character evidence to be introduced during cross-examination of Eklund's character witness?

On January 1.5, 1992, prior to trial, Eklund filed notice of the character witnesses he intended to call at trial. During the jury trial, Svinth, Eklund's character witness, responded to questions on direct examination and testified as follows:

Q. Did you know whether or not he exhibited any harsh words or discipline toward any of the children?

A. None. In fact, maybe to the opposite. In fact, he didn't see them as often as he would have liked, really. Be was probably the opposite, you know, letting them get away with more than I would have, myself.

On cross examination, the prosecutor for the State asked the following:

Q. Why is it, do you think, that Mr. Eklund didn't get to see his kids as much as he liked?

8

A.    His drinking problem, I am sure, was a big factor.

Q.    He would rather be out drinking and carousing around, as opposed to taking care of his family?

A:    It was a factor.

EKLDWD'S COUNSEL:  Your Honor, I object to that question as calling for a conclusion.

THE COURT:  Overruled.

The State continued to cross-examine Svinth about Eklund's convictions for driving under the influence, and his incarceration. The State then asked the witness:

Q.    Do you know what Mr. Eklund is charged with?

A.    No, not: really.

Q.    He is accused of using threat of violence to coerce his thirteen-year-old stepdaughter into allowing him to have intercourse with her.  Does it surprise you that he has threatened her with violence, that he could be violent?

A.    I have never known him to be violent.

Q.    How long have you known him?

A.    Since the mid-seventies.

Q.    And you have never known him to be violent?

A.    NO.

Q.    Were you aware of a charge filed against him in 1974?

A.    NO.

EKLDWD'S COUNSEL:  Your Honor, I object to this question as well.  Improper cross-examination.

THE COURT:  Overruled.

Q.    Were you aware, in 1974, that he was charged with murder7

A.    Yeah, I have been filled in with bits and pieces
from my sister.

Q.    Did she tell you that he took a man by the name of
"Fox" out hunting, shot him in the head, and dumped
his body in a barrow pit?

A.    I am not aware of the particulars.  I don't know if
she was even--

The State continued to ask questions concerning prior reports that Eklund was emotionally and physically abusive toward his children while he was intoxicated.  Eklund objected to the questions as introducing new evidence which the court denied.

After trial, Eklund moved for a mistrial, contending that the State had introduced inadmissible character evidence because Eklund did not open the door to his character as to truthfulness or that he was law-abiding, but had presented testimony to show generally that he treated his children well and never hit J.L. to rebut her testimony that he threatened her.  The court denied this motion by stating:

> The Court is satisfied that the Rules of Evidence--for
> the requirement precedent to allowing the State, in this
> case, to produce evidence as to certain of Defendant's
> character, the requirements of Rule 404, the Court is
> satisfied with that being opened up, first by the
> Defendant, since beginning with counsel's opening
> statement, and then various questions on
> cross-examination, as well as Defendant's testimony; and
> the motion is denied.

The State contends that Eklund opened the door to all legitimate cross-examination of that witness when he called his character witness to support his good reputation that he was a kind, caring, and nonviolent father pursuant to Rule 404(a)(1), M.R.Evid.

10

Eklund argues that the court erred in overruling his objection to the state's statement that he was charged with murder in 1974. Eklund denies that he was charged with murder in 1974. He admits that he was convicted in 1973 of manslaughter, a crime of negligence rather than of intent. He argues that the statement was highly prejudicial and inflammatory and impossible to defend against, and that he did not receive a fair and impartial trial. We agree.

A mistrial may be granted upon a demonstration of manifest necessity, along with the denial of a fair and impartial trial. This Court will not disturb a lower court's denial of a motion for mistrial unless there is clear and convincing proof of error. State v. Dixon (Mont. 1994), 51 St. Rep. 135, 137.

A new trial may be granted if there is an "irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial." Section 25-11-102(1), MCA.

Generally, character evidence is not admissible to prove conduct. Rule 404(a), M.R.Evid. Rule 404(a)(1), M.R.Evid., allows the prosecution to rebut the accused's offer of a pertinent trait of character. Rule 405(a), M.R.Evid., provides the following method to prove character:

> Reputation or opinion. . . . proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

11

The State claims that the cross-examination properly rebutted Eklund's character evidence. State v. Clark (1984), 209 Mont. 473, 682 P.2d 1339. In Clark, the defendant was charged with sexual intercourse without consent with his young stepdaughter whereby he offered character evidence that he was gentle and nonviolent with his children and others, and concerning his propensity for truthfulness. By presenting character evidence, the defendant had placed his character at issue pursuant to 404(a)(1), M.R.Evid. Using the method in Rule 405(a), M.R.Evid., the prosecution properly cross-examined the defense character witness by asking whether he knew the following: the defendant had a prior armed robbery conviction; the defendant forcibly escaped from jail by overpowering the jailer; and other violent crimes the defendant committed while serving in Vietnam. Clark, 682 P.2d at 1347. This Court found that the evidence was relevant to rebut the defendant's good character evidence because the defendant denied the charges and denied any violent acts toward the stepdaughter; also, this Court noted that the court gave the jury a cautionary instruction. Clark, 682 P.2d at 1348.

The present case is distinguishable from Clark. The evidence in Clark concerned prior convictions that depicted the defendant's violent character, and the probative value of the evidence outweighed the unfair prejudice to the defendant. Here, the State cross-examined Eklund's character witness about Eklund's prior murder charges to rebut his nonviolent character evidence: the actual conviction for these charges was for manslaughter. See

12

State v. Benton (1992), 251 Mont. 401, 404, 825 P.2d 565, 567, where danger of unfair prejudice of evidence of charges, not a conviction, clearly outweighed the probative value.

Character is defined as the "aggregate of the moral qualities which belong to and distinguish an individual person; the general result of one's distinguishing attributes." Black's Law Dictionary 232 (6th ed. rev. 1990). While the prosecution may rebut defendant's offer of character evidence, the prosecution must present legitimate and relevant character evidence, and "the accused's entire life should not be searched in a effort to convict him." State v. Heine (1975), 169 Mont. 25, 29, 544 P.2d 1212, 1214.

After the court overruled Eklund's objection to the State's inquiry concerning murder charges, the State asked the following: "Did she tell you that he took a man by the name of "Fox" out hunting, shot him in the head, and dumped his body in a barrow pit?" This Court, in State v. Jones (1914), 48 Mont. 505, 517, 139 P. 441, 446, condemned questions in cross-examination where the question assumes the existence of facts not admissible as independent evidence, citing People v. Mullings (1890), 83 Cal. 138, 23 P. 229:

> It is quite evident that the questions, and not the answers, were what the prosecution thought important. The purpose of the questions clearly was to keep persistently before the jury the assumption of damaging facts which could not be proven, and thus impress upon their minds the probability of the existence of the assumed facts upon which the questions were based.

13

This Court said "[w]hether or not such questions are answered or not, the putting of them is condemned by the courts and text-writers as gross misconduct." Jones, 139 P. at 446. In the present case, the inquiry was improper and was intended to show Eklund had a violent character, and the prejudice to him outweighed the probative value under Rule 403, M.R.Evid. We conclude that Eklund has met his burden of showing clear and convincing evidence of error.

Section 46-20-701, MCA, provides that any ruling of the trial court that affects the respondent's substantial rights will be deemed harmless unless the record shows that the error was prejudicial. The test to decide if the prejudicial error requires a reversal is "whether there is a reasonable possibility that the inadmissible evidence might have contributed to the verdict." Brodniak v. State (1989), 239 Mont. 110, 114, 779 P.2d 71, 73, (quoting State v. Gray (1983), 207 Mont. 261, 268, 673 P.2d 1262, 1266). In our inquiry, we must examine the totality of the circumstances in which the error occurred. Brodniak, 779 P.2d at 74.

In the present case, the following testimony was presented by the State: J.L.'s testimony concerning the alleged offenses; J.L.'s mother who gave general testimony: the neighbor's testimony who reported the alleged offenses: and the social worker's and detective's testimony who were involved in the investigation. Because the jury reached its verdict by considering the credibility of all the witnesses, the misleading evidence must have created

14

great prejudice to Eklund for the jury to know he was charged with murder. We conclude that there is a reasonable possibility that the inadmissible evidence of Eklund's murder charge denied him a fair and impartial trial.

Because we have found reversible error on the evidence concerning murder charges and remand for retrial, we decline to discuss further evidence concerning Eklund's driving under the influence convictions, that he had abused alcohol, and that he had been incarcerated.

We affirm the District Court's denial of Eklund's motion to dismiss for lack of speedy trial, reverse the District Court's denial of motion for mistrial, and remand for a new trial.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

15