No. 98-354

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 277

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RICHARD LANCE GOWAN,

Defendant and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Katherine R. Curtis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

David M. Ortley, Kalispell, Montana; Todd D. Glazier, Kalispell, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, Carol Schmidt, Assistant Montana Attorney General, Helena, Montana; Thomas J. Esch, Flathead County Attorney, Edward J. Corrigan, Deputy Flathead County Attorney, Kalispell, Montana

Submitted on Briefs: June 1, 2000
Decided: November 2, 200

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1 Defendant, Richard Lance Gowan (Gowan), appeals from a jury verdict in the Eleventh Judicial District Court, Flathead County, finding him guilty of two counts of criminal sale of dangerous drugs. We reverse and remand for a new trial.

¶2 The dispositive issue on appeal can be restated as follows:

Did the District Court err in holding that a defense witness' gratuitous statement, offered in response to the State's cross-examination, opened the door for rebuttal character evidence?

## FACTUAL BACKGROUND

**¶3 On October 21, 1997, Gowan was charged by information with two counts of criminal sale of dangerous drugs, both felonies. At his arraignment, Gowan pled not guilty to both counts. On November 17, 1997, the District Court executed a preprinted form entitled Action Taken at Omnibus Hearing. In that form the State indicated that it would not rely upon Gowan's prior acts or convictions. Gowan indicated his intent to rely upon the defense of entrapment.**

¶4 A jury trial was held on March 2-3, 1998. After opening statements, the parties again met with the District Court to discuss the admissibility of Gowan's prior perjury conviction and what evidence, if any, would be admissible should Gowan choose to testify. The District Court ruled that while direct evidence of a prior conviction was not admissible, the State would be permitted to ask Gowan, in the event he testified, only if he had lied under oath in the past. Once again, the District Court clarified that the State was not to make references to Gowan's prior convictions.

¶5 At trial, Gowan called his girl friend, Kris McPherson (McPherson), as a witness. She was not designated as a character witness and on direct-examination McPherson offered no character testimony. On cross-examination, however, the following transpired:

[Prosecutor]

Q. Why didn't you tell him to go to the police, instead of selling drugs, to get the title to your car?

[McPherson]

A. Because I didn't tell him to sell drugs to get the title to the car. I actually told him the guy's melon - -

(court reporter stops proceedings)

A. Sorry. And then it wasn't until after everything had went down that I found out - - I never knew Paul's last name. I'm in the car business, so I deal with all the car dealers in town. He had just told me about some car from Paul, paid him in full, and he hadn't got a title yet. And I couldn't believe he'd do that, but he's a very honest and trusting person.

Q. Who's honest and trusting?

A. Lance.

Q. Lance is honest?

A. Yes. He trusted Mr. Southwick with the title.

Q. What do you base that comment on, him being honest? Come on, Ms. McPherson.

A. I don't know what you're getting at, Mr. Corrigan.

Q. Lance isn't honest.

[Defense Counsel]

Mr. Musick: Objection, your honor.

¶6 After argument of counsels, the District Court ruled that in light of our decision in State v. Austad (1982), 197 Mont. 70, 641 P.2d 1373, and under Rules 404(a)(1) and 405(a), M. R.Evid., that McPherson had offered character evidence. Therefore, the District Court concluded that McPherson had opened the door to character evidence, even though her testimony was in response to cross-examination. The State was allowed to inquire if McPherson was aware that Gowan had been convicted of perjury. The State also made references to Gowan being on probation and being sued for failure to deliver a title.

¶7 The jury found Gowan guilty of both counts of criminal sale of dangerous drugs. Gowan filed an application for review of his sentence with the Sentence Review Division of the Montana Supreme Court. After they carefully considered Gowan's application, the board affirmed his sentence with the modification that one year be suspended on count I.

¶8 On May 19, 1998, Gowan, acting *pro se*, filed a notice of appeal with the Clerk of the Montana Supreme Court, which was subsequently filed with the Clerk of the District Court, Flathead County, on May 28, 1998. The District Court also granted Gowan's request for the appointment of counsel and his request to proceed *in forma pauperis*. Gowan now appeals his conviction to this Court.

## STANDARD OF REVIEW

¶9 We review a district court's evidentiary rulings for an abuse of discretion. State v. MacKinnon, 1998 MT 78, ¶ 12, 288 Mont. 329, ¶ 12, 957 P.2d 23, ¶ 12 (not an abuse of discretion to prohibit cross-examination of the victim's mother about prior unrelated incidents of sexual assault). A district court is granted broad discretion to determine whether evidence is relevant and admissible. *MacKinnon*, ¶ 12. If evidence has been improperly admitted, however, we will find reversible error based on prejudice to the defendant where there is a reasonable probability that the inadmissible evidence might have contributed to the conviction. State v. Berger, 1998 MT 170, ¶ 39, 290 Mont. 78, ¶ 39, 964 P.2d 725, ¶ 39 (not an abuse of discretion to allow questions during redirect-examination about why the witness moved from town in order to give a complete impression. The jury is entitled to a complete explanation, even if that explanation reflects poorly upon the defendant.).

## DISCUSSION

¶10 **Did the District Court err in holding that a defense witness' gratuitous statement,**

**offered in response to the State's cross-examination opened the door for rebuttal character evidence?**

¶11 This issue requires us to address, for the first time, whether a gratuitous character statement made by a defense witness while being cross-examined by the State "opens the door" to rebuttal character evidence. We conclude that although a defendant can open the door with statements made during either direct or cross-examination, and a defense witness can open the door on direct-examination, a defense witness cannot inadvertently open the door on cross-examination. Under Rule 404(a)(1), M.R.Evid., only the accused can "open the door" for the prosecution to introduce rebuttal character evidence.

¶12 Gowan argues that the District Court abused its discretion by allowing evidence of his perjury conviction in violation of its own pretrial order. He claims that this was inherently prejudicial, because he did not have the opportunity to adequately prepare for admission of this evidence. He alleges that he made critical decisions regarding both *voir dire* and trial strategy in reliance upon the District Court's pretrial order. Gowan cites State v. Doll (1985), 214 Mont. 390, 396-97, 692 P.2d 473, 476; and State v. Howell (1987), 226 Mont. 148, 152, 734 P.2d 214, 217, in support of this argument.

¶13 Gowan concedes that the State can enter rebuttal evidence of bad character if a defendant opens the door by first entering evidence of good character. He, however, argues that a non-character defense witness cannot place a defendant's character at issue with statements made in response to the State's cross-examination, because only the defendant can place his character at issue and thus open the door for the State's rebuttal. Gowan argues that his situation is distinguishable from *Austad*. He points out that in *Austad*, the accused himself made unnecessary, self-serving statements which he knew to be untrue. While in his case his witness inadvertently commented that he was honest and trusting in explaining how he could have been duped by the State's informant.

¶14 Gowan argues that his case is closer to State v. Webb (1992), 252 Mont. 248, 255, 828 P.2d 1351, 1356; and State v. Harris (1991), 247 Mont. 405, 410, 808 P.2d 453, 456. In those cases we held that it was improper for the State to open its own door so it could then enter evidence of good character to rehabilitate its own witness. Gowan claims that allowing a witness to open the door on cross-examination would discourage defendants, with a criminal history, from calling witnesses who could provide crucial testimony about a limited aspect or element of the alleged crime. He further asserts that in virtually every case, the State could devise some strategy to elicit character testimony from a witness and

open the door to present impeachment evidence or rebuttal testimony of bad character. On cross- examination, the State is in control of the witness and able to substantially prejudice the defendant with one question.

¶15 The State counters that the District Court did not abuse its discretion when it allowed the State to cross-examine a defense witness regarding Gowan's prior perjury conviction after the witness testified that Gowan was honest. The State claims that Rules 404(a) and 405(a), M.R.Evid., allow the State to inquire into relevant specific instances of conduct once the defense offers a pertinent trait of the defendant's character. The State argues that this also applies to statements made by defense witnesses on cross-examination.

¶16 The State argues that this case is similar to *Austad*. In that case the defendant answered a cross-examination question with an unnecessary, self-serving statement. Here, the witness testified that Gowan was honest when the State cross-examined her. The State asserts that her answer was an unnecessary, self-serving statement which, as further questioning revealed, she knew to be untrue, but which obviously placed Gowan in a better light with the jury. Therefore, she opened the door to Gowan's character by testifying that he was honest.

¶17 The State attempts to lend credence to this argument by saying that once the statement was made it was necessary to counter it's effect on the jury. In support, the State cites "[t]he right of cross-examination extends not only to all facts stated by the witness in his original examination, but to all other facts connected with them, whether directly or indirectly, which tend to enlighten the jury upon the question in controversy. . . . As a general rule, in the interests of truth and justice, a wide latitude should be permitted, in the cross-examination of an adverse witness; or as otherwise stated, a full cross-examination should be permitted." State v. McKnight (1955), 129 Mont. 8, 20, 281 P.2d 816, 822 (citing State v. Howard (1904), 30 Mont. 518, 527, 77 P. 50, 54 and 70 C.J., *Witnesses*, § 792 at 619) overruled on other grounds by State v. Wirtanen (1965), 146 Mont. 268, 406 P.2d 376.

¶18 The right to a full cross-examination of a defendant's character traits, once placed at issue, is not limitless. State v. Eklund (1994), 264 Mont. 420, 430, 872 P.2d 323, 329 (it was reversible error for the State to cross-examine defendant's character witness about the defendant's prior murder charges to rebut his nonviolent character evidence); State v. Heine (1976), 169 Mont. 25, 29, 544 P.2d 1212, 1214 ("the accused's entire life should not be searched in an effort to convict him."). Further, where the defendant has not opened the

door regarding a pertinent character trait, the State is not allowed to inquire on cross-examination into relevant, specific instances of conduct. Rule 404(a), M.R.Evid.; United States v. Park (5th Cir. 1976), 525 F.2d 1279, 1283 (where the prosecution elicited testimony from two witnesses that was beyond the scope of direct-examination). Unless and until the accused places his character at issue, the door is closed for the State to enter evidence of a defendant's character because the dangers of prejudice, confusion, and time-consumption outweigh the probative value. *see*, 1 John W. Strong et al., McCormick on Evidence § 190, at 658-59 (5th ed. 1999).

¶19 Generally, a defendant's character or character trait is not admissible in criminal cases to prove that the defendant acted in conformity with that trait. Rule 404(a), M.R.Evid. "The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade [sic] them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." Michelson v. United States (1948), 335 U.S. 469, 475-76. In other words, persons of bad character are more likely to commit crimes than are persons of good character, but the law fears that a defendant will be convicted merely because he is an unsavory person.

¶20 The various justifications for this general rule are reducible to three: (1) the strong tendency to believe a defendant is guilty of the offense charged merely because he is a likely person to do such acts because of his distasteful propensities; (2) the deep tendency of human nature to condemn, not because a defendant is guilty of the offense charged, but because he is a bad person who has escaped punishment from past transgressions and may as well be punished now that he is caught; and (3) the overwhelming burden of requiring a defendant to not only defend against the offense charged but also allegations of bad conduct from his whole past. 1A Wigmore, Evidence § 58.2, at 1215 (Tiller rev. 1983). Or put simply, character evidence is excluded to prevent undue prejudice, confusion of issues, and unfair surprise.

¶21 Justice Jackson rightfully described the law regarding proof of a criminal defendant's character as "archaic, paradoxical and full of compromises and compensations by which an irrational advantage to one side is offset by a poorly reasoned counterprivilege to the other." *Michelson*, 335 U.S. at 486. It extends "helpful but illogical options to a defendant" but then balances these with "equally illogical conditions to keep the advantage from becoming an unfair and unreasonable one." *Michelson*, 335 U.S. at 478-79. Even saying that the defendant placed his character at issue is misleading. The defendant's character does not become an element of the offense. Rather, the defendant is attempting to prove

his innocence through circumstantial evidence. Likewise, the State attempts to establish that the defendant's bad propensities make his guilt of the charged crime more probable.

¶22 Because character evidence is relevant in resolving probabilities of guilt, however, the law allows a defendant to introduce evidence of his good character. Rule 404(a)(1), M.R. Evid.; *see*, 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 101, at 544 (2nd ed. 1994). "He may introduce affirmative testimony that the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged." *Michelson,* 335 U.S. at 476. But in doing so, he may be opening the door to irresponsible gossip, innuendo and smear.

¶23 Once the door is opened, the State may introduce rebuttal evidence of its version of the defendant's true character. Rule 404(a)(1), M.R.Evid; State v. Baker (1991), 249 Mont. 156, 159, 815 P.2d 587, 589. The State may accomplish this by either cross-examining the defendant's character witness or by calling rebuttal witnesses of its own. Rule 405(a), M.R. Evid; State v. D.B.S. (1985), 216 Mont. 234, 245-46, 700 P.2d 630, 637-38 (cross-examining a character witness) overruled on other grounds by State v. Olson (1997), 286 Mont. 364, 951 P.2d 571; State v. Anderson (1984), 211 Mont. 272, 292, 686 P.2d 193, 204 (use of a rebuttal witness). In establishing bad character, the State may enter evidence of both reputation and opinion. State v. Clark (1984), 209 Mont. 473, 489, 682 P.2d 1339, 1348. "[I]t is not the man that he is, but the name that he has which is put in issue." *Michelson*, 335 U.S. at 479. For these reasons, only the defendant is allowed to make the precarious decision to put character at issue.

¶24 We have held that a defendant put his character at issue by answering a question on cross-examination with an unnecessary, self-serving statement which he knew to be untrue, intended to place him in a better light with the jury. In that situation, the door is open for the prosecution to rebut this gratuitous character testimony by the defendant. *Austad*, 197 Mont. at 90, 641 P.2d at 1384. We concluded that "[t]he Rules of Evidence were not intended to muzzle the State against [a] defendant's deliberate attempts to mislead jury members by lying to them in answering specific question." *Austad*, 197 Mont. at 90, 641 P.2d at 1384. The case at bar, however, involves statements that the defendant had no control over.

¶25 Here, Gowan's witness offered no character testimony on direct-examination. On cross-examination, however, this defense witness gave a non-responsive answer which contained a gratuitous good character statement about Gowan. She said "but he's a very

honest and trusting person." The State should have requested that the witness confine her answers to the questions asked, and requested that her statement be stricken from the record. Instead the State pounced on this opportunity to introduce evidence of bad character. The District Court, relying on our decision in *Austad*, concluded that this opened the door for the State to pursue rebuttal character evidence. We disagree.

¶26 The facts here are distinguishable from those of *Austad*. In *Austad*, the defendant opened the door with his own statements. Something he had total control over. He attempted to enter testimony of his good character and he paid the price. Gowan, conversely, had no control over what his witness said while being cross-examined by the State. The State cannot elect to convert a defense witness, who has neither been called as a character witness nor testified of good character on direct-examination, into a character witness. 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 404.11[2][b], at 404-25 (Joseph M. McLaughlin ed., 2nd ed. 2000). Because of the deep tendency of human nature to give evidence of bad character much weight in assigning guilt, only the accused are allowed to open that door.

¶27 Since only a defendant can open the door to rebuttal character evidence, the District Court erred in holding that a defense witness could in a statement made during cross-examination. Something Gowan had no control over. Because this issue is dispositive, we need not address the other issues Gowan raises.

¶28 Gowan's conviction is reversed and his case is remanded for a new trial.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

Justice James C. Nelson dissents.

¶29 In this case the majority announce a new rule of criminal procedure. Hereafter, if, in a

criminal trial, a defense witness, on cross-examination, gratuitously testifies or answers in a non-responsive manner and in so doing vouches for the defendant's good character when the defendant has not otherwise placed his character in issue, the prosecution must stand mute. The State may not cross-examine further regarding the witness's character testimony and the State may not offer rebuttal character testimony. Rather, the State may only request the court to direct the witness to confine her answers to the questions asked and request that the offending statements be stricken from the record.

¶30 The majority's articulation and adoption of this new rule suffers from a fundamental flaw. There is no legal authority to support it.

¶31 The majority start with the statement at ¶ 11, that "[u]nder Rule 404(a)(1), M.R.Evid., only the accused can 'open the door' for the prosecution to introduce rebuttal character evidence." Actually, Rule 404(a)(1), provides:

> (a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> (1) Character of accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same.

The plain language of the Rule allows the State to rebut evidence of a pertinent trait of character offered by an accused. The Rule itself places no limitations on how (intentionally or inadvertently) or when (on direct examination or on cross-examination) the accused puts his character in issue. Moreover, the Rule does not restrict the accused from putting his character in issue through his own witness. Indeed, as here, should the accused put his character at issue through the statements of his witness on cross-examination, then the plain language of Rule 404(a)(1) allows the State to question and to rebut that evidence. The majority improperly read into the Rule limitations and restrictions that are simply not there. *See* § 1-2-101, MCA (office of the judge is simply to ascertain and declare what is in terms or in substance contained in a statute--not to insert what has been omitted or to omit what has be inserted).

¶32 Next, the majority cite various cases in support of its creative interpretation of Rule 404(a)(1). Again, however, the cited authorities fail to support the Court's decision. In *State v. Harris* (1991), 247 Mont. 405, 808 P.2d 453, there was no Rule 404(a)(1) issue at

all and no claim that the State improperly put the defendant's character at issue. *Harris* involved but three issues: whether the State's expert witness improperly commented on the credibility of an alleged victim who testified at trial (*Harris,* 252 Mont. at 407, 808 P.2d at 454); whether the trial court erred in allowing the State's expert to identify the defendant as the perpetrator by allowing the expert to testify as to hearsay statements made by the alleged victims during therapy (*Harris,* 252 Mont. at 408, 808 P.2d at 454); and whether the district court erred in granting the jury's request to have the alleged victim's testimony read during deliberations (*Harris*, 247 Mont at 408, 808 P.2d at 454). Not only was the factual underpinning for the legal issues framed in *Harris* entirely different from that in the instant case, but, more importantly, Rule 404(a)(1) and the defendant's character were never at issue at all. In fact, Rule 404(a)(1) is never even mentioned in the *Harris* opinion.

¶33 Likewise, in *State v. Webb* (1992), 252 Mont. 248, 828 P.2d 1351, there was no issue involving the prosecutor improperly placing the defendant's character in issue. *Webb,* 252 Mont. at 250-51, 828 P.2d at 1353. The only even remotely similar issue involved the State's attack on the character of a defense witness and its violation of Rule 608(a), M.R. Evid. *Webb,* 252 Mont. at 255-57, 828 P.2d at 1355-57. Citing *Harris,* we condemned the State for opening the door for opinion testimony regarding the witness's veracity and then attacking the witness's character. *Webb,* 252 Mont. at 256-57, 828 P.2d at 356-57.

¶34 That, of course, did not happen in the case at bar. Here, the prosecutor did not open the door to the defendant's character. Rather, Gowan's own witness, McPherson, through her gratuitous, non-responsive and perjurious answer to the State's proper cross-examination put his character in issue. Under the applicable rule, Rule 404(a)(1), the prosecution was entitled to rebut this evidence.

¶35 Obviously, neither *Harris* nor *Webb* support the majority's rationale.

¶36 Moreover, while Gowan argues these cases for the proposition that "in virtually every case the State could devise some strategy to elicit character testimony from a witness and open the door to present impeachment evidence or rebuttal testimony of bad character" it is undisputed that that is not the fact situation presented in the instant case. There is not one scintilla of evidence in the record that the prosecution devised any strategy to elicit or to open the door to the testimony that McPherson offered. Again, Gowan's witness took it upon herself to gratuitously bolster his character by presenting testimony known to be untrue through a non-responsive answer to the State's legitimate cross-examination questions.

¶37 Indeed, in "pouncing" on Gowan's paranoid speculation as to the potential for machinations of character evidence by the State, the majority create an equally untenable situation. Now, in virtually every case, *the defendant* can devise some strategy to elicit favorable character testimony from his witness during cross-examination knowing that the State will not be able to rebut the evidence once it is placed before the jury. To the extent they apply at all, *Webb* and *Harris* already protect a defendant from the very sort of improper conduct that is of concern to Gowan. These cases do not, however, support the new rule created by the majority from whole cloth in the case *sub judice*.

¶38 Similarly, *United States v. Park* (5th Cir. 1976), 525 F.2d 1279, is inapposite. There the court determined that the prosecution's cross-examination of the witness was "not only beyond the scope of direct examination [but was] also irrelevant to the issues before the court, improper, and highly prejudicial." *Park,* 525 F.2d at 1283. Again, that is not what happened in Gowan's trial. Here the State was properly cross-examining Gowan's witness and *she* put in the good character testimony by an unresponsive and knowingly untruthful answer to the State's question. Under this fact scenario, *Park* is contra to the majority's holding in allowing the examiner to rebut improper testimony offered by the witness.

> The restrictive rule [prohibiting cross-examination from exceeding the scope of direct examination] does not foreclose inquiries designed to impeach a witness, by, for example, attacking his reliability and credibility.

*Park, 525 P.2d at 1283.*

¶39 *State v. Eklund* (1994), 264 Mont. 420, 872 P.2d 323, is not on point either. In that case we reversed based on the State attacking the defendant's good character evidence by cross-examination of a defense witness with information that the defendant had been *charged* with murder when, in fact, he had only been *convicted* of manslaughter. *Eklund,* 264 Mont. at 429-30, 872 P.2d at 328-29. We did not prohibit the State from rebutting knowingly untruthful good character evidence gratuitously offered by a defense witness. That was not even an issue.

¶40 *State v. Heine* (1976), 169 Mont. 25, 544 P.2d 1212, also cited by the majority, likewise does not buttress its rationale. There, the issue was the remoteness of the prosecution's impeachment evidence as to the defendant's good character. We concluded that the impeachment offered was not too remote--i.e., not an improper search of the defendant's entire life in an effort to convict him. *Heine*, 169 Mont. at 29, 544 P.2d at

1214. Of course, there was no "searching of the defendant's entire life" by the State's cross-examination of McPherson in the instant case.

¶41 More importantly, however, in *Heine* we adhered to the rule that the majority ignore in the case at bar.

When the accused calls a witness to support his generally good reputation in the community, he opens the door to all legitimate cross-examination of that witness and must therefore accept the consequences which result.

*Heine, 169 Mont. at 28, 544 P.2d at 1214 (citations omitted).*

¶42 Again, neither *Park*, *Eklund* nor *Heine* can be legitimately cited as justification for the majority's unprecedented, court-created rule of evidence in the present case.

¶43 In like fashion, the Court's discussion commencing at ¶¶ 19-22 is simply a red herring. No one disputes the good reasons for normally not allowing evidence of bad character. That, however, is not the issue. Here, the State did not first put the defendant's character in issue by offering adverse character evidence. Rather, Gowan's claim of good character was first injected into the trial by *his* witness. His witness "opened the door" via her untruthful, gratuitous and non-responsive answer to the prosecutor's question. Once the door is opened, Rule 404(a)(1) allows, as it should, the State to rebut that evidence (the majority's misreading of the Rule to the contrary) as do Montana's cases cited at ¶ 23 of the majority opinion. There is, however, nothing in these authorities supporting the Court's statement that "only the defendant is allowed to make the precarious decision to put character at issue."

¶44 Finally, I note that in our case law, we repeatedly emphasize those aspects of trial practice and procedure which enhance the "search for truth." *See, e.g., State v. Waters* (1987), 228 Mont. 490, 495, 743 P.2d 617, 620 (the purpose of Montana's discovery scheme is to enhance the search for truth); *State v. Dezeeuw*, 1999 MT 331, ¶ 16, 297 Mont. 379, ¶ 16, 992 P.2d 1276, ¶ 16 (holding that the trial court's exclusion of defendant's eyewitness to the altercation, when his only defense was self-defense, hindered the search for truth and therefore was an abuse of the court's discretion); *Billings Leasing Co. v. Payne* (1978), 176 Mont. 217, 225, 577 P.2d 386, 390-91 (quoting from Wright & Miller that it is the "inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case, and to guide, direct, and assist them

toward an intelligent understanding of the legal and factual issues involved in their search for truth"); *State v. Jones* (1996), 278 Mont. 121, 128, 923 P.2d 560, 564 (counsel's duties of loyalty and confidentiality are compatible with the search for truth).

¶45 Frankly, I am hard pressed to understand how the "search for truth" is advanced by a rule which requires the State's counsel to stand like a deer in the headlights after the defendant's own witness, through no misconduct of the prosecutor, perjuriously misleads the jury as to the defendant's character during the State's proper cross-examination of the witness. The majority's new rule is not only without any underpinning legal authority, it is patently unfair. It protects no one but liars.

¶46 I can find no abuse of discretion in the trial court's ruling that the defendant's witness, McPherson, offered character testimony which the State was entitled to rebut. I would affirm Gowan's conviction. I dissent from our failure to do so.

/S/ JAMES C. NELSON

Chief Justice J. A. Turnage and Justice Karla M. Gray concur in the foregoing dissent.

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY