JUSTICE NELSON
dissents.
¶29 In this case the majority announce a new rule of criminal procedure. Hereafter, if, in a criminal trial, a defense witness, on cross-examination, gratuitously testifies or answers in a non-responsive manner and in so doing vouches for the defendant’s good character when the defendant has not otherwise placed his character in issue, the prosecution must stand mute. The State may not cross-examine further regarding the witness’s character testimony and the State may not offer rebuttal character testimony. Rather, the State may only request the court to direct the witness to confine her answers to the questions asked and request that the offending statements be stricken from the record.
¶30 The majority’s articulation and adoption of this new rule suffers from a fundamental flaw. There is no legal authority to support it.
¶31 The majority start with the statement at ¶ 11, that “[ujnder Rule 404(a)(1), M.R.Evid., only the accused can ‘open the door’ for the prosecution to introduce rebuttal character evidence.” Actually, Rule 404(a)(1), provides:
(a) Character evidence generally. Evidence of a person’s character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
(1) Character of accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same.
The plain language of the Rule allows the State to rebut evidence of a pertinent trait of character offered by an accused. The Rule itself places no limitations on how (intentionally or inadvertently) or when (on direct examination or on cross-examination) the accused puts his character in issue. Moreover, the Rule does not restrict the accused from putting his character in issue through his own witness. Indeed, as here, should the accused put his character at issue through the *137 statements of his witness on cross-examination, then the plain language of Rule 404(a)(1) allows the State to question and to rebut that evidence. The majority improperly read into the Rule limitations and restrictions that are simply not there. See § 1-2-101, MCA (office of the judge is simply to ascertain and declare what is in terms or in substance contained in a statute — not to insert what has been omitted or to omit what has be inserted).
¶32 Next, the majority cite various cases in support of its creative interpretation of Rule 404(a)(1). Again, however, the cited authorities fail to support the Court’s decision. In State v. Harris (1991), 247 Mont. 405, 808 P.2d 453, there was no Rule 404(a)(1) issue at all and no claim that the State improperly put the defendant’s character at issue. Harris involved but three issues: whether the State’s expert witness improperly commented on the credibility of an alleged victim who testified at trial (Harris, 252 Mont. at 407, 808 P.2d at 454); whether the trial court erred in allowing the State’s expert to identify the defendant as the perpetrator by allowing the expert to testify as to hearsay statements made by the alleged victims during therapy (Harris, 252 Mont. at 408, 808 P.2d at 454); and whether the district court erred in granting the jury’s request to have the alleged victim’s testimony read during deliberations (Harris, 247 Mont at 408, 808 P.2d at 454). Not only was the factual underpinning for the legal issues framed in Harris entirely different from that in the instant case, but, more importantly, Rule 404(a)(1) and the defendant’s character were never at issue at all. In fact, Rule 404(a)(1) is never even mentioned in the Harris opinion.
¶33 Likewise, in State v. Webb (1992), 252 Mont. 248, 828 P.2d 1351, there was no issue involving the prosecutor improperly placing the defendant’s character in issue. Webb, 252 Mont. at 250-51, 828 P.2d at 1353. The only even remotely similar issue involved the State’s attack on the character of a defense witness and its violation of Rule 608(a), M.R.Evid. Webb, 252 Mont. at 255-57, 828 P.2d at 1355-57. Citing Harris, we condemned the State for opening the door for opinion testimony regarding the witness’s veracity and then attacking the witness’s character. Webb, 252 Mont. at 256-57, 828 P.2d at 356-57.
¶34 That, of course, did not happen in the case at bar. Here, the prosecutor did not open the door to the defendant’s character. Rather, Gowan’s own witness, McPherson, through her gratuitous, non-responsive and perjurious answer to the State’s proper cross-examination put his character in issue. Under the applicable *138 rule, Rule 404(a)(1), the prosecution was entitled to rebut this evidence.
¶35 Obviously, neither Harris nor Webb support the majority’s rationale.
¶36 Moreover, while Gowan argues these cases for the proposition that “in virtually every case the State could devise some strategy to elicit character testimony from a witness and open the door to present impeachment evidence or rebuttal testimony of bad character” it is undisputed that that is not the fact situation presented in the instant case. There is not one scintilla of evidence in the record that the prosecution devised any strategy to elicit or to open the door to the testimony that McPherson offered. Again, Gowan’s witness took it upon herself to gratuitously bolster his character by presenting testimony known to be untrue through a non-responsive answer to the State’s legitimate cross-examination questions.
¶37 Indeed, in “pouncing” on Gowan’s paranoid speculation as to the potential for machinations of character evidence by the State, the majority create an equally untenable situation. Now, in virtually every case, the defendant can devise some strategy to elicit favorable character testimony from his witness during cross-examination knowing that the State will not be able to rebut the evidence once it is placed before the jury. To the extent they apply at all, Webb and Harris already protect a defendant from the very sort of improper conduct that is of concern to Gowan. These cases do not, however, support the new rule created by the majority from whole cloth in the case sub judice.
¶38 Similarly, United States v. Park (5th Cir. 1976), 525 F.2d 1279, is inapposite. There the court determined that the prosecution’s cross-examination of the witness was “not only beyond the scope of direct examination [but was] also irrelevant to the issues before the court, improper, and highly prejudicial.” Park, 525 F.2d at 1283. Again, that is not what happened in Gowan’s trial. Here the State was properly cross-examining Gowan’s witness and she put in the good character testimony by an unresponsive and knowingly untruthful answer to the State’s question. Under this fact scenario, Park is contra to the majority’s holding in allowing the examiner to rebut improper testimony offered by the witness.
The restrictive rule [prohibiting cross-examination from exceeding the scope of direct examination] does not foreclose inquiries designed to impeach a witness, by, for example, attacking his reliability and credibility.
*139 Park, 525 P.2d at 1283.
¶39 State v. Eklund (1994), 264 Mont. 420, 872 P.2d 323, is not on point either. In that case we reversed based on the State attacking the defendant’s good character evidence by cross-examination of a defense witness with information that the defendant had been charged with murder when, in fact, he had only been convicted of manslaughter. Eklund, 264 Mont. at 429-30, 872 P.2d at 328-29. We did not prohibit the State from rebutting knowingly untruthful good character evidence gratuitously offered by a defense witness. That was not even an issue.
¶40 State v. Heine (1976), 169 Mont. 25, 544 P.2d 1212, also cited by the majority, likewise does not buttress its rationale. There, the issue was the remoteness of the prosecution’s impeachment evidence as to the defendant’s good character. We concluded that the impeachment offered was not too remote — i.e., not an improper search of the defendant’s entire life in an effort to convict him . Heine, 169 Mont. at 29, 544 P.2d at 1214. Of course, there was no “searching of the defendant’s entire life” by the State’s cross-examination of McPherson in the instant case.
¶41 More importantly, however, in Heine we adhered to the rule that the majority ignore in the case at bar.
When the accused calls a witness to support his generally good reputation in the community, he opens the door to all legitimate cross-examination of that witness and must therefore accept the consequences which result.
Heine, 169 Mont. at 28, 544 P.2d at 1214 (citations omitted).
¶42 Again, neither Park, Eklund nor Heine can be legitimately cited as justification for the majority’s unprecedented, court-created rule of evidence in the present case.
¶43 In like fashion, the Court’s discussion commencing at ¶¶ 19-22 is simply a red herring. No one disputes the good reasons for normally not allowing evidence of bad character. That, however, is not the issue. Here, the State did not first put the defendant’s character in issue by offering adverse character evidence. Rather, Gowan’s claim of good character was first injected into the trial by his witness. His witness “opened the door” via her untruthful, gratuitous and non-responsive answer to the prosecutor’s question. Once the door is opened, Rule 404(a)(1) allows, as it should, the State to rebut that evidence (the majority’s misreading of the Rule to the contrary) as do Montana’s cases cited at ¶ 23 of the majority opinion. There is, however, nothing *140 in these authorities supporting the Court’s statement that “only the defendant is allowed to make the precarious decision to put character at issue.”
¶44 Finally, I note that in our case law, we repeatedly emphasize those aspects of trial practice and procedure which enhance the “search for truth.” See, e.g., State v. Waters (1987), 228 Mont. 490, 495, 743 P.2d 617, 620 (the purpose of Montana’s discovery scheme is to enhance the search for truth); State v. Dezeeuw, 1999 MT 331, ¶ 16, 297 Mont. 379, ¶ 16, 992 P.2d 1276, ¶ 16 (holding that the trial court’s exclusion of defendant’s eyewitness to the altercation, when his only defense was self-defense, hindered the search for truth and therefore was an abuse of the court’s discretion); Billings Leasing Co. v. Payne (1978), 176 Mont. 217, 225, 577 P.2d 386, 390-91 (quoting from Wright & Miller that it is the “inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case, and to guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for truth”); State v. Jones (1996), 278 Mont. 121, 128, 923 P.2d 560, 564 (counsel’s duties of loyalty and confidentiality are compatible with the search for truth).
¶45 Frankly, I am hard pressed to understand how the “search for truth” is advanced by a rule which requires the State’s counsel to stand like a deer in the headlights after the defendant’s own witness, through no misconduct of the prosecutor, perjuriously misleads the jury as to the defendant’s character during the State’s proper cross-examination of the witness. The majority’s new rule is not only without any underpinning legal authority, it is patently unfair. It protects no one but liars.
¶46 I can find no abuse of discretion in the trial court’s ruling that the defendant’s witness, McPherson, offered character testimony which the State was entitled to rebut. I would affirm Gowan’s conviction. I dissent from our failure to do so.
CHIEF JUSTICE TURNAGE and JUSTICE GRAY concur in the foregoing dissent.